CHAD A. READLER
Acting Assistant Attorney General
BRIAN STRETCH
United States Attorney
JOHN R. TYLER
Assistant Director
W. SCOTT SIMPSON (Va. Bar #27487)
Senior Trial Counsel
Department of Justice, Room 7210
Civil Division, Federal Programs Branch
Post Office Box 883
Washington, D.C.  20044
Telephone:      (202) 514-3495
Facsimile:      (202) 616-8470
E-mail:         scott.simpson@usdoj.gov
COUNSEL FOR DEFENDANTS
DONALD J. TRUMP, President of the
United States; UNITED STATES OF
AMERICA; JOHN F. KELLY, Secretary of
Homeland Security; JEFFERSON B.
SESSIONS, III, Attorney General of the
United States

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| CITY AND COUNTY OF SAN FRANCISCO,<br><br>                Plaintiff,<br>      v.<br><br>DONALD J. TRUMP, *et al.*,<br><br>                Defendants. | No. 3:17-cv-00485-WHO<br><br>**DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS; MEMORANDUM OF POINT AND AUTHORITIES**<br><br>Date:     July 19, 2017<br>Time:    2:00 p.m. |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................................ii

NOTICE OF MOTION AND MOTION TO DISMISS ................................................................... 1

MEMORANDUM OF POINTS AND AUTHORITIES .................................................................. 1

INTRODUCTION ............................................................................................................................... 1

ISSUES PRESENTED ........................................................................................................................ 3

STATUTORY AND ADMINISTRATIVE BACKGROUND ......................................................... 4

    I.    Broad Executive Discretion in Enforcement of Immigration Law ......................... 4

    II.    Executive Order 13,768 ................................................................................................. 6

    III.    The AG Memorandum ................................................................................................... 7

PROCEDURAL BACKGROUND .................................................................................................... 8

ARGUMENT ....................................................................................................................................... 8

    I.    Plaintiff Lacks Standing and Its Claims Are Unripe ............................................. 10

    II.    Plaintiff Fails to State a Viable Claim for Declaratory Relief Regarding Its Compliance with Section 1373 ..................................................... 11

    III.    Plaintiff Fails to State Any Viable Claim Regarding the Executive Order, Which Is an Internal Directive and Does Not Directly Affect the Plaintiff ................................................................... 12

    IV.    Plaintiff Fails to State Any Viable Claim Regarding the Grant Eligibility Provision, as Elucidated by the AG Memorandum ........................... 13

        A.    Plaintiff Fails to State a Viable Claim that the Grant Eligibility Provision Violates the Separation of Powers ......................... 14

        B.    Plaintiff Fails to State a Viable Claim that the Grant Eligibility Provision Exceeds the Spending Power ................................. 16

        C.    Plaintiff Fails to State a Viable Claim that the Grant Eligibility Provision Violates the Tenth Amendment .............................. 21

    V.    Plaintiff's Claim that the "Appropriate Enforcement Action" Provision of Section 9(a) Violates the Tenth Amendment Is Non-Justiciable .................... 22

CONCLUSION .................................................................................................................................. 24

## TABLE OF AUTHORITIES

<u>CONSTITUION</u>

U.S. Const. Art. I, § 8, cl. 1 ..............................................................................................14, 16

U.S. Const., Art. III, § 2 ...............................................................................................................8

U.S. Const. art. III, § 2, cl. 1 .....................................................................................................22

<u>CASES</u>

*Abbott Labs. v. Gardner*, 387 U.S. 136 (1967) .............................................................10, 23, 24

*Aguiar v. Wells Fargo Bank, N.A.*, No. 12-CV-03653 YGR,
    2012 WL 5915124 (N.D. Cal. Nov. 26, 2012)..................................................................2

*Alexander v. Sandoval*, 532 U.S. 275 (2001) ............................................................................11

*Am. Fed'n of State, Cty. & Mun. Employees v. Scott*,
    717 F.3d 851 (11th Cir. 2013).....................................................................................14, 15

*Arizona Dream Act Coal. v. Brewer*, 855 F.3d 957 (9th Cir. Feb. 2, 2017)..............................4

*Arizona v. United States*, 567 U.S. 387, 132 S. Ct. 2492 (2012) .........................................4, 24

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009).......................................................................................9

*Ashcroft v. Mattis*, 431 U.S. 171 (1977)...................................................................................12

*Barbour v. Washington Metro. Area Transit Auth.*, 374 F.3d 1161 (D.C. Cir. 2004) .................18

*Bigelow v. Virginia*, 421 U.S. 809 (1975) ................................................................................23

*Bldg. & Const. Trades Dep't, AFL-CIO v. Allbaugh*, 295 F.3d 28 (D.C. Cir. 2002)..................7, 8

*Bureau of Labor & Indus. ex rel. Richardson v. U.S. W. Commc'ns, Inc.*,
    288 F.3d 414 (9th Cir. 2002)............................................................................................22

*Caltex Plastics, Inc. v. Lockheed Martin Corp.*, 824 F.3d 1156 (9th Cir. 2016) ...........................9

*Chen v. Schiltgen*, No. C-94-4094 MHP, 1995 WL 317023 (N.D. Cal. May 19, 1995)...............12

*Cty. of Santa Clara v. Trump*, No. 17-CV-00485-WHO,
    2017 WL 1459081 (N.D. Cal. Apr. 25, 2017)................................................14, 15, 17

*DKT Mem'l Fund Ltd. v. AID*, 887 F.2d 275 (D.C. Cir. 1989) ............................................14, 15

*Eagle-Picher Indus., Inc. v. EPA*, 759 F.2d 905 (D.C. Cir. 1985) ..........................................23

*Envtl. Def. Ctr., Inc. v. EPA*, 344 F.3d 832 (9th Cir. 2003) ....................................................21

*FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215 (1990) ...................................................... 23

*Golden v. Zwickler*, 394 U.S. 103 (1969) ................................................................. 11

*Harris Cty. Texas v. MERSCORP Inc.*, 791 F.3d 545 (5th Cir. 2015) ............................. 11

*Haw. Cty. Green Party v. Clinton*, 14 F. Supp. 2d 1198 (D. Haw. 1998) ...................................... 22

*In re Apple Iphone Antitrust Litig.*, 846 F.3d 313 (9th Cir. 2017) ................................... 9

*In re ATM Fee Antitrust Litig.*, No. C 04-2676 CRB, 2010 WL 2557519
  (N.D. Cal. June 21, 2010) ................................................................................... 9

*Legal Aid Soc'y of Alameda County v. Brennan,* 608 F.2d 1319 (9th Cir. 1979) ......................... 12

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992) ...................................................... 9

*Mayweathers v. Newland*, 314 F.3d 1062 (9th Cir. 2002) ............................................... 18

*Mir v. Little Co. of Mary Hosp.*, 844 F.2d 646 (9th Cir. 1988) ......................................... 2

*Muhammad v. Berreth*, No. C 12-02407 CRB, 2012 WL 4838427
  (N.D. Cal. Oct. 10, 2012) ..................................................................................... 11

*N.Y. v. United States*, 505 U.S. 144 (1992) ....................................................... 10, 18, 21

*Nat'l Fed'n of Indep. Bus. v. Sebelius*, 132 S. Ct. 2566 (2012) ...................................... 10, 19, 21

*Nat'l Inst. of Family & Life Advocates v. Harris*, 839 F.3d 823 (9th Cir. 2016) ........................ 22

*Navarro v. Block*, 250 F.3d 729 (9th Cir. 2001) .......................................................... 9

*NTEU v. Bush*, 891 F.2d 99 (5th Cir. 1989) ....................................................... 14, 15

*Pennhurst State Sch. & Hosp. v. Halderman*, 451 U.S. 1 (1981) ........................................ 16

*Renne v. Geary*, 501 U.S. 312 (1991) ..................................................................... 9

*Robinson v. United States*, 586 F.3d 683 (9th Cir. 2009) ................................................ 9

*South Dakota v. Dole*, 483 U.S. 203 (1987) .......................................................... passim

*Standard Alaska Prod. Co. v. Schaible*, 874 F.2d 624 (9th Cir. 1989) ............................... 23

*State of Cal. v. United States*, 104 F.3d 1086 (9th Cir. 1997) ....................................... 19

*Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83 (1998) .................................... 9, 23, 24

*Strong v. Ford*, 108 F.3d 1386 (9th Cir. 1997) ........................................................ 11

*Tenaska Washington Partners II, L.P. v. United States*, 34 Fed. Cl. 434 (1995) ...................... 7

*Texas v. United States*, 523 U.S. 296 (1998) ..................................................... 23, 24

*U.S. Term Limits, Inc. v. Thornton*, 514 U.S. 779 (1995) ............................................. 21

*U.S. W. Commc'ns v. MFS Intelenet, Inc.*, 193 F.3d 1112 (9th Cir. 1999) .................................. 23

*United States v. Alabama*, 691 F.3d 1269 (11th Cir. 2012) ........................................ 24

*United States v. Pickard*, 100 F. Supp. 3d 981 (E.D. Cal. 2015) .................................... 12

*United States v. Salerno*, 481 U.S. 739 (1987) ................................................... passim

*United States v. South Carolina*, 720 F.3d 518 (4th Cir. 2013) .................................. 24

*Washington State Grange v. Washington State Republican Party*, 552 U.S. 442 (2008) .............. 14

*White v. Paulsen*, 997 F. Supp. 1380 (E.D. Wash. 1998) ......................................... 11

*Whitmore v. Arkansas*, 495 U.S. 149 (1990) ........................................... 10, 23, 24

*Winter v. California Med. Review, Inc.*, 900 F.2d 1322 (9th Cir. 1989) ......................... 24

## STATUTES

8 U.S.C. §§ 1101 *et seq.* ........................................................................ 4

8 U.S.C. § 1103(c)(1) ........................................................................... 7

8 U.S.C. § 1357(g)(1) ........................................................................... 5

8 U.S.C. § 1357(g)(10)(B) ....................................................................... 5

8 U.S.C. § 1373 ............................................................................. passim

28 U.S.C. § 512 ............................................................................... 2, 7

28 U.S.C. § 1331 ............................................................................... 11

28 U.S.C. § 1346 ............................................................................... 11

28 U.S.C. §§ 2201-2202 ........................................................................ 11

42 U.S.C. § 3712(a) ........................................................................... 15

42 U.S.C. § 3752(a)(5)(D) ...................................................................... 15

Pub. L. No. 104-208, Div. C, Title VI, § 642, 110 Stat. 3009 (1996) ............................. 5

## REGULATIONS

28 C.F.R. § 0.5(c) ........................................................................... 2, 7

1   EXECUTIVE ORDERS

2   Exec. Order No. 13,608, 77 Fed. Reg. 26,409 (2012)........................................................4

3   Exec. Order No. 13,726, 81 Fed. Reg. 23,559 (2016)........................................................4

4   Exec. Order No. 13,768, 82 Fed. Reg. 8,799 (Jan. 30, 2017) .................................passim

5

6   OTHER AUTHORITIES

7   Mem. from Att'y Gen. for All Dep't Grant-Making Components (May 22, 2017)...............passim

8   Mem. from John Kelly, Sec'y of Homeland Sec., to Kevin McAleenan,
       Acting Comm'r, U.S. Customs and Border Protection, et al.,
9      *Enforcement of the Immigration Laws to Serve the National Interest* (Feb. 20, 2017) ..............5

10  Mem. from Michael E. Horowitz, Inspector Gen., to Karol V. Mason,
       Assistant Att'y Gen., Office of Justice Programs, *Department of Justice
11     Referral of Allegations of Potential Violations of 8 U.S.C. § 1373 by
       Grant Recipients* (May 31, 2016)...................................................................5

12  Randolph D. Moss, *Executive Branch Legal Interpretation: A Perspective from the
       Office of Legal Counsel*, 52 Admin. L. Rev. 1303, 1319-20 (2000)...........................................7

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

NOTICE OF MOTION AND MOTION TO DISMISS

PLEASE TAKE NOTICE that on Wednesday, July 19, 2017, at 2:00 p.m., or as soon thereafter as counsel may be heard, before The Honorable William H. Orrick, in Courtroom 2, 17th Floor, of the United States Courthouse, 450 Golden Gate Avenue, San Francisco, California, the defendants will move, and hereby do move, for dismissal of this action under Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure.  This motion is based on the following Memorandum of Points and Authorities, the evidence and records on file in this action, and any other written or oral evidence or argument that may be presented at or before the time this motion is heard by the Court.[1]

MEMORANDUM OF POINTS AND AUTHORITIES

INTRODUCTION

On January 25, 2017, the President signed Executive Order 13,768 for the declared purpose of "direct[ing] executive departments and agencies . . . to employ all lawful means to enforce the immigration laws of the United States."  *See* Exec. Order No. 13,768, § 1, 82 Fed. Reg. 8,799 (Jan. 30, 2017).  Section 9 of the Order, which is the subject of this litigation, directs the Attorney General and the Secretary of Homeland Security ("Secretary"), "in their discretion and to the extent consistent with law, [to] ensure that jurisdictions that willfully refuse to comply with 8 U.S.C. 1373 . . . are not eligible to receive Federal grants, except as deemed necessary for law enforcement purposes . . . ."  *Id*. § 9(a).  Section 9 also instructs the Attorney General to take "appropriate enforcement action" against any entity that violates Section 1373 or has a statute or policy that "prevents or hinders the enforcement of Federal law."  *Id*.  Section 1373 provides, among other things, that no government entity or official may prohibit or restrict the sending or receiving of information regarding the citizenship or immigration status of any individual to federal immigration authorities.  8 U.S.C. § 1373(a).

---

[1] Plaintiff names "DOES 1-100" as defendants in this matter but does not identify those individuals or specify the capacity in which they are being sued (Doc. 105 ¶ 18).  Undersigned counsel does not purport to represent those individuals, and claims against them are not at issue in this motion to dismiss.  Moreover, because those individuals have not been named or served, granting this motion would resolve this litigation in its entirety.

Motion to Dismiss; Memorandum
No. 3:17-cv-00485-WHO

1    The Order is a presidential directive, directed to the Attorney General, the Secretary, and

2    other federal officials.  It does not purport to alter the existing requirements of Section 1373 (or

3    any other federal law), to impose new burdens on state or local jurisdictions, or to expand the

4    legal authority of the Attorney General or the Secretary.  Rather, it simply announces the policy

5    of the Executive Branch and directs the Attorney General and the Secretary, in their discretion

6    and consistent with their existing legal authority, to ensure that jurisdictions that willfully refuse

7    to comply with Section 1373 not be eligible to receive federal grants and to take enforcement

8    action as appropriate.  *Id.*

9        The Attorney General, in the exercise of his discretion under Section 9(a) of the Order and

10   his overall responsibility to advise executive department heads, *see* 28 U.S.C. § 512; 28 C.F.R.

11   § 0.5(c), has issued authoritative, binding guidance regarding the implementation of Section 9(a).

12   *See* Mem. from Att'y Gen. for All Dep't Grant-Making Components (May 22, 2017) (Attachment

13   1 hereto) (hereinafter AG Mem.).[2]  Among other things, the AG Memorandum provides (1) that

14   the grant eligibility provision in Section 9(a) applies "solely to federal grants administered by the

15   Department of Justice or the Department of Homeland Security ["DHS"], and not to other sources

16   of federal funding[,]" (2) that the Department of Justice ("DOJ") will require jurisdictions

17   applying for certain DOJ-administered grants "to certify their compliance with federal law,

18   including 8 U.S.C. § 1373," (3) that the certification will be required only where the agency is

19   "statutorily authorized to impose such a condition," (4) that "[a]ll grantees will receive notice of

20   their obligation to comply with section 1373," and (5) that only "jurisdiction[s] that fail[] to

21   certify compliance with section 1373 will be ineligible to receive [an] award[]."  AG Mem. at 1-2.

22

23   _____

24       [2] This Court can freely consider the AG Memorandum on this motion to dismiss without
     affecting the nature of the motion.  *See Mir v. Little Co. of Mary Hosp.*, 844 F.2d 646, 649 (9th

25   Cir. 1988) ("[I]t is proper for the district court to take judicial notice of matters of public record
     outside the pleadings and consider them for purposes of the motion to dismiss.") (internal

26   quotation marks omitted); *Aguiar v. Wells Fargo Bank, N.A.*, No. 12-CV-03653 YGR, 2012 WL
     5915124, at *2 (N.D. Cal. Nov. 26, 2012) (stating that court "may consider matter that is properly

27   the subject of judicial notice, such as court filings and other public records, without converting a
     motion to dismiss into one for summary judgment").

28

1       The AG Memorandum further establishes that San Francisco lacks standing in this case

2   and that its claims are unripe; thus, all of plaintiff's claims herein should be dismissed for lack of

3   jurisdiction.  To the extent the Court addresses plaintiff's individual claims, each claim must be

4   dismissed under either Rule 12(b)(6) or 12(b)(1) of the Federal Rules of Civil Procedure,

5   particularly in light of the AG Memorandum.  Given that the grant eligibility provision in Section

6   9(a) will apply only to certain grants administered by DOJ and DHS and only where the imposi-

7   tion of such a condition is statutorily authorized, and given that grantees will be asked to certify

8   their compliance with 8 U.S.C. § 1373 as part of the grant process, the City cannot state viable

9   claims that the grant eligibility provision violates the Separation of Powers, the Spending Clause,

10  or the Tenth Amendment (Doc. 105 ¶¶ 149-153).  This is especially true given that these claims

11  are facial challenges to an Executive Order, and plaintiff cannot show that "no set of circum-

12  stances exists under which the [Order] would be valid."  *United States v. Salerno*, 481 U.S. 739,

13  745 (1987).

14      San Francisco has also failed to state a claim on which relief can be granted regarding its

15  compliance with Section 1373 (Doc. 105 ¶¶ 144-148) because the City identifies no cause of

16  action authorizing such relief and a ruling on that subject would constitute a prohibited advisory

17  opinion.  And finally, given that no action has been taken against San Francisco pursuant to the

18  provision in the Executive Order instructing the Attorney General to take "appropriate

19  enforcement action" against certain entities, the Court lacks subject matter jurisdiction over

20  plaintiff's challenge to that provision under the Tenth Amendment (*id.* ¶¶ 154-157).

21      Accordingly, the Court should dismiss plaintiff's Second Amended Complaint for failure

22  to state a claim on which relief can be granted and for lack of subject matter jurisdiction.

23  ISSUES PRESENTED

24      1.  Whether the plaintiff has established its standing and the ripeness of its claims.

25      2.  Whether the plaintiff has stated a viable claim for declaratory relief regarding its

26  compliance with 8 U.S.C. § 1373.

27      3.  Whether the plaintiff can challenge an Executive Order that constitutes only an internal

28  Executive Branch directive and has no direct effect on the plaintiff.

4.  Whether the plaintiff has stated a viable claim that the grant eligibility provision in Section 9(a) of the Executive Order violates the Separation of Powers.

5.  Whether the plaintiff has stated a viable claim that the grant eligibility provision exceeds the Spending Power.

6.  Whether the plaintiff has stated a viable claim that the grant eligibility provision violates the Tenth Amendment.

7.  Whether the Court has subject matter jurisdiction over plaintiff's claim that the "appropriate enforcement action" provision in Section 9(a) violates the Tenth Amendment.

STATUTORY AND ADMINISTRATIVE BACKGROUND

I.    Broad Executive Discretion in Enforcement of Immigration Law

"The Government of the United States has broad, undoubted power over the subject of immigration and the status of aliens." *Arizona v. United States*, 567 U.S. 387, 132 S. Ct. 2492, 2497 (2012).  Through the Immigration and Nationality Act ("INA"), 8 U.S.C. §§ 1101 *et seq.*, Congress granted the Executive Branch significant authority to control the entry, movement, and other conduct of foreign nationals in the United States.  Under the INA, the Department of Homeland Security, the Department of Justice, and other agencies of the Executive Branch administer and enforce the immigration laws.  Likewise, the INA permits the Executive Branch to exercise considerable executive discretion to direct enforcement pursuant to federal policy objectives.  *See Arizona Dream Act Coal. v. Brewer*, 855 F.3d 957, 967 (9th Cir. Feb. 2, 2017) ("By necessity, the federal statutory and regulatory scheme, as well as federal case law, vest the Executive with very broad discretion to determine enforcement priorities.").  Several Presidents have exercised this discretion by Executive Order, and they have done so in differing ways, reflecting their individual judgments as to how best to take care that the laws of the United States be faithfully executed. *See, e.g.*, Exec. Order No. 13,726, 81 Fed. Reg. 23,559 (2016) ("Suspending Entry Into the United States of Persons Contributing to the Situation in Libya"); Exec. Order No. 13,608, 77 Fed. Reg. 26,409 (2012) ("Suspending Entry Into the United States of Foreign Sanctions Evaders With Respect to Iran and Syria").  The Secretary has also consistently exercised similar executive discretion in the enforcement of federal immigration law. *See, e.g.*, Mem. from John Kelly, Sec'y

of Homeland Sec., to Kevin McAleenan, Acting Comm'r, U.S. Customs and Border Protection, et al., *Enforcement of the Immigration Laws to Serve the National Interest* (Feb. 20, 2017).[3]

The INA contains a number of provisions regarding the involvement of state and local authorities in the enforcement of immigration law.  For example, Section 287(g) of the INA authorizes the Secretary to enter into written agreements with a state or local government under which officers of such government may "perform a function of an immigration officer in relation to the investigation, apprehension, or detention of aliens in the United States."  8 U.S.C. § 1357(g)(1).  Likewise, the INA provides for cooperation with DHS in the "identification, apprehension, detention, or removal of aliens not lawfully present in the United States," even without a formal cooperation agreement.  *Id*. § 1357(g)(10)(B).  Another provision, 8 U.S.C. § 1373, ensures the sharing of information between federal and state actors:

> Notwithstanding any other provision of Federal, State, or local law, a Federal, State, or local government entity or official may not prohibit, or in any way restrict, any government entity or official from sending to, or receiving from, [federal immigration authorities] information regarding the citizenship or immigration status, lawful or unlawful, of any individual.

*Id*. § 1373(a); *see* Pub. L. No. 104-208, Div. C, Title VI, § 642, 110 Stat. 3009, 3009-707 (1996). Section 1373 also proscribes prohibiting or restricting any government entity from "maintaining" information regarding the immigration status of any individual.  8 U.S.C. § 1373(b).

Well before the issuance of Executive Order 13,768, the compliance of state and local governments with Section 1373 has been of interest to federal agencies because such governments are recipients of federal grants.  For example, the Inspector General of the Department of Justice issued a memorandum on May 31, 2016, as plaintiff notes (Doc. 105 ¶ 43), describing a concern that several state and local governments receiving federal grants were not complying with 8 U.S.C. § 1373.  *See* Mem. from Michael E. Horowitz, Inspector Gen., to Karol V. Mason, Assistant Att'y Gen., Office of Justice Programs, *Department of Justice Referral of Allegations of Potential Violations of 8 U.S.C. § 1373 by Grant Recipients* (May 31, 2016), *available at*

---

[3]  This memorandum is available at https://www.dhs.gov/ sites/ default/ files/ publications/ 17_0220_S1_Enforcement-of-the-Immigration-Laws-to-Serve-the-National-Interest.pdf.

1    https://oig.justice.gov/reports/2016/1607.pdf.  Although the Inspector General observed that some

2    applications of certain local ordinances might be inconsistent with Section 1373, *id*. at 4-8, the

3    report nevertheless noted that "no one at DHS . . . has made a formal legal determination whether

4    certain state and local laws or policies violate Section 1373, and we are unaware of any

5    Department of Justice decision in that regard."  *Id*. at 8 n.12.

6    II.    Executive Order 13,768

7            The President signed Executive Order 13,768, *Enhancing Public Safety in the Interior of*

8    *the United States*, on January 25, 2017.  82 Fed. Reg. 8,799 (Jan. 30, 2017).  The Order seeks to

9    "[e]nsure the faithful execution of the immigration laws," including the INA.  *See id*. § 2(a), 82

10   Fed. Reg. at 8,799.  It sets forth several policies and priorities regarding enforcement of federal

11   immigration law within the United States, and it instructs certain federal officials to use "all

12   lawful means" to enforce those laws.  *See id*. §§ 1, 4, 82 Fed. Reg. at 8,799-800.

13           As permitted by the INA, Executive Order 13,768 establishes priorities regarding aliens

14   who are subject to removal from the United States under the immigration laws.  *Id*. § 5, 82 Fed.

15   Reg. at 8,800.  Several provisions of the Order instruct officials to take actions directing future

16   conduct, including instructions to promulgate certain regulations within one year, to take "all

17   appropriate action" to hire additional immigration officers, to seek agreements with state and

18   local officials under Section 287(g) of the INA (referred to above), to develop a program to

19   ensure adequate prosecution of criminal immigration offenses, and to establish an office to

20   provide certain services to victims of crimes committed by removable aliens.  *Id*. §§ 6, 7, 8, 11,

21   13, 82 Fed. Reg. at 8,799-802.  Throughout, the Order specifies that federal officials are to take

22   these actions as "permitted by law" or as "consistent with law."  *Id*. §§ 7, 8, 9(a), 10(b), 12, 14,

23   17, 18(b), 82 Fed. Reg. at 8,799-802.

24           Section 9 of the Executive Order provides that "[i]t is the policy of the executive branch to

25   ensure, to the fullest extent of the law, that a State, or a political subdivision of a State, shall

26   comply with 8 U.S.C. 1373."  Section 9(a) directs federal agencies to achieve that policy:

27           In furtherance of this policy, the Attorney General and the Secretary [of Homeland

28           Security], in their discretion and to the extent consistent with law, shall ensure that

Motion to Dismiss; Memorandum                                6
No. 3:17-cv-00485-WHO

1   jurisdictions that willfully refuse to comply with 8 U.S.C. 1373 (sanctuary juris-
2   dictions) are not eligible to receive Federal grants, except as deemed necessary for
    law enforcement purposes by the Attorney General or the Secretary.  The Secre-
3   tary has the authority to designate, in his discretion and to the extent consistent
    with law, a jurisdiction as a sanctuary jurisdiction.  The Attorney General shall
4   take appropriate enforcement action against any entity that violates 8 U.S.C. 1373,
    or which has in effect a statute, policy, or practice that prevents or hinders the
5   enforcement of Federal law.

6   *Id.* § 9(a), 82 Fed. Reg. at 8,801.  Section 9 also instructs the Director of the Office of

7   Management and Budget to "obtain and provide relevant and responsive information on all

8   Federal grant money that currently is received by any sanctuary jurisdiction."  *Id.* § 9(c), 82 Fed.

9   Reg. at 8,801.

10   III.   The AG Memorandum

11        On May 22, 2017, the Attorney General issued a Memorandum regarding the

12   implementation of Executive Order 13,768.  *See* AG Mem. at 1.  The Attorney General has a

13   statutory duty to advise executive department heads on "questions of law," 28 U.S.C. § 512, and

14   to furnish formal legal opinions to executive agencies, 28 C.F.R. § 0.5(c).  Also, although the

15   Secretary principally administers the immigration laws, the INA provides that "the determination

16   and ruling by the Attorney General with respect to all questions of law shall be controlling."

17   8 U.S.C. § 1103(c)(1).  By longstanding tradition and practice, the Attorney General's legal

18   opinions are treated as authoritative by the heads of executive agencies.  *See, e.g.*, *Tenaska*

19   *Washington Partners II, L.P. v. United States*, 34 Fed. Cl. 434, 439 (1995); Randolph D. Moss,

20   *Executive Branch Legal Interpretation: A Perspective from the Office of Legal Counsel*, 52

21   Admin. L. Rev. 1303, 1319-20 (2000).

22        The AG Memorandum sets forth in a formal, conclusive manner the administration's

23   interpretation of Section 9(a) of the Executive Order.  The Memorandum specifies that the Order

24   does not "purport to expand the existing statutory or constitutional authority of the Attorney

25   General and the Secretary of Homeland Security in any respect," but rather instructs those

26   officials to take certain action, "to the extent consistent with the law."  AG Mem. at 2; *see Bldg.*

27   *& Const. Trades Dep't, AFL-CIO v. Allbaugh*, 295 F.3d 28, 33 (D.C. Cir. 2002) (noting that the

28   President is merely wielding his "supervisory authority over the Executive Branch" where he

1    "directs his subordinates" to take certain action "but only '[t]o the extent permitted by law'").

2    The AG Memorandum further clarifies that the grant eligibility provision in Section 9(a) is

3    limited "solely to federal grants administered by [DOJ] or [DHS]," and to grants requiring the

4    applicant to "certify . . . compliance with federal law, including 8 U.S.C. § 1373, as a condition

5    for receiving an award."  AG Mem. at 1, 2.  Only "jurisdiction[s] that fail[] to certify compliance

6    with [8 U.S.C. § 1373] will be ineligible to receive [an] award[]" pursuant to the grant eligibility

7    provision.  *Id.*  In other words, the provision applies only where an applicant or grant recipient

8    has had the choice either to certify compliance with 8 U.S.C. § 1373 as an express condition of

9    eligibility to participate in a certain grant program, or to refuse to certify compliance and thereby

10   render itself ineligible to participate in the program.  The AG Memorandum also makes clear that,

11   with respect to Section 1373 compliance conditions, DOJ and DHS may impose such conditions

12   only pursuant to the exercise of "existing statutory or constitutional authority," and only where

13   "grantees will receive notice of their obligation to comply with section 1373."  AG Mem. at 2.

14   Lastly, the Attorney General states that, "[a]fter consultation with the Secretary of Homeland

15   Security, [he has] determined that, for purposes of enforcing the Executive Order, the term

16   'sanctuary jurisdiction' will refer only to jurisdictions that 'willfully refuse to comply with 8

17   U.S.C. 1373.'"  *Id.*

18                               PROCEDURAL BACKGROUND

19        San Francisco filed this action on January 31, 2017, followed by its Second Amended

20   Complaint on May 23 (Doc. 105).  Plaintiff filed a motion for preliminary injunction against the

21   implementation of Section 9 of the Executive Order, which the Court granted on April 25, 2017

22   (Doc. 82).  Defendants filed a motion for reconsideration or clarification of the preliminary

23   injunction on May 23, 2017 (Doc. 107), which remains pending.

24                                        ARGUMENT

25        A claim should be dismissed under Rule 12(b)(1) if the court lacks subject matter

26   jurisdiction to consider it.  The jurisdiction of the federal courts is limited to "Cases" and

27   "Controversies."  U.S. Const., Art. III, § 2.  "Jurisdiction is power to declare the law, and when it

28   ceases to exist, the only function remaining to the court is that of announcing the fact and

1    dismissing the cause." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998). Courts

2    should "presume that [they] lack jurisdiction unless the contrary appears affirmatively from the

3    record," *Renne v. Geary*, 501 U.S. 312, 316 (1991), and "the party asserting subject matter

4    jurisdiction has the burden of proving its existence," *Robinson v. United States*, 586 F.3d 683,

5    685 (9th Cir. 2009); *see Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992).

6          Additionally, a claim should be dismissed under Rule 12(b)(6) of the Federal Rules of

7    Civil Procedure if it "fail[s] to state a claim upon which relief can be granted." A motion under

8    Rule 12(b)(6) "tests the legal sufficiency" of a complaint. *Navarro v. Block*, 250 F.3d 729, 732

9    (9th Cir. 2001). On such a motion, the district court accepts all "plausible," "well-pleaded"

10   factual allegations as true, *In re Apple Iphone Antitrust Litig.*, 846 F.3d 313, 315 (9th Cir. 2017);

11   *Caltex Plastics, Inc. v. Lockheed Martin Corp.*, 824 F.3d 1156, 1159 (9th Cir. 2016), but need not

12   accept "a legal conclusion couched as a factual allegation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678

13   (2009). The complaint is subject to dismissal if it fails to "state a claim to relief that is plausible

14   on its face." *Id.* "A complaint may be dismissed for failure to state a claim where the factual

15   allegations do not raise the right to relief above the speculative level." *In re ATM Fee Antitrust*

16   *Litig.*, No. C 04-2676 CRB, 2010 WL 2557519, at *4 (N.D. Cal. June 21, 2010).

17         Plaintiff's Second Amended Complaint contains five claims: Count One alleges that San

18   Francisco's laws comply with 8 U.S.C. § 1373; Count Two alleges that the grant eligibility

19   provision in Section 9(a) of the Executive Order violates the constitutional Separation of Powers,

20   the Spending Clause of Article I, and the Tenth Amendment; and Count Three alleges that the

21   provision in the Order requiring the Attorney General to take "appropriate enforcement action"

22   against certain entities also violates the Tenth Amendment. All of these claims should be

23   dismissed for lack of standing and ripeness under Rule 12(b)(1), as made even clearer by the AG

24   Memorandum. Also, all of plaintiff's claims against the Executive Order should be dismissed

25   under Rule 12(b)(6) because the Order is only an internal Executive Branch directive with no

26   direct effect on the City.

27         Further, plaintiff's first four claims should be dismissed for failure to state a claim on

28   which relief can be granted under Rule 12(b)(6), and the last claim should be dismissed for

1    independent reasons under Rule 12(b)(1).  In relation to the merits of Count One, Section 1373

2    contains no right of action to seek a declaration regarding a jurisdiction's compliance with the

3    statute, and plaintiff has cited no other source for such a cause of action.  Also, since the

4    Secretary of Homeland Security has not designated or threatened to designate San Francisco as a

5    "sanctuary jurisdiction" under Section 9(a), any judicial ruling on the City's compliance with

6    Section 1373 would be an advisory opinion.

7    In relation to Count Two, the AG Memorandum makes clear that the grant eligibility

8    provision will be applied only where authorized by statute; that the limitations on the spending

9    power described in *South Dakota v. Dole*, 483 U.S. 203 (1987), will be followed; and that the

10   grant eligibility provision will not be used to "compel the States to enact or administer a federal

11   regulatory program" or to "act on the Federal Government's behalf" in violation of the Tenth

12   Amendment.  *See N.Y. v. United States*, 505 U.S. 144, 188 (1992); *Nat'l Fed'n of Indep. Bus. v.*

13   *Sebelius*, 132 S. Ct. 2566, 2627 (2012).

14   And in relation to Count Three, defendants have taken no "enforcement action" against

15   San Francisco under Section 9(a) and there is no indication that any such action is imminent, such

16   that the City lacks standing to challenge that provision in the Order and its challenge is not ripe.

17   I.    Plaintiff Lacks Standing and Its Claims Are Unripe

18   Article III of the Constitution requires that a plaintiff have standing and that its claims be

19   ripe for judicial consideration.  To have standing, the plaintiff must show that it has suffered

20   "concrete," "palpable" injury, *see Whitmore v. Arkansas*, 495 U.S. 149, 155 (1990), and, for the

21   claims to be ripe, the challenged enactment must have been "formalized and its effects felt in a

22   concrete way."  *See Abbott Labs. v. Gardner*, 387 U.S. 136, 148-49 (1967).  As discussed in

23   Defendants' Motion for Reconsideration or, in the Alternative, Clarification of the Court's Order

24   of April 25, 2017, the AG Memorandum makes even clearer that these requirements are not

25   satisfied here and that, therefore, all of San Francisco's claims must be dismissed for lack of

26   standing and ripeness (Doc. 107 at 8-12).

27

28

II.     Plaintiff Fails to State a Viable Claim for Declaratory Relief
        Regarding Its Compliance with Section 1373

Count One in the Second Amended Complaint seeks a judicial declaration that San Francisco's laws comply with 8 U.S.C. § 1373 (Doc. 105 ¶¶ 144-148).  The City does not, however, identify a right of action, in Section 1373 or elsewhere, that would allow it to pursue such declaratory relief, and, in any event, the declaration that plaintiff seeks would constitute a prohibited advisory opinion.  Thus, Count One does not plead a claim on which relief can be granted, and the Court would lack jurisdiction to grant the declaration sought.

"To raise a claim in federal court, plaintiffs must demonstrate both that a federal court will have jurisdiction over their claim, and also that they (the plaintiffs) have a right of action to initiate that claim.  In other words, establishing the court's jurisdiction and the litigants' right of action are two requirements that must be satisfied independently."  *Harris Cty. Texas v. MERSCORP Inc.*, 791 F.3d 545, 552 (5th Cir. 2015); *see Alexander v. Sandoval*, 532 U.S. 275, 286-87 (2001) (absent statutory intent to create a cause of action, one "does not exist and courts might not create one, no matter how desirable that may be as a policy matter").  The general jurisdictional statutes that plaintiff cites, 28 U.S.C. §§ 1331 and 1346 (Doc. 105 ¶ 11), do not create independent causes of action.  *See Strong v. Ford*, 108 F.3d 1386 (9th Cir. 1997) (unpublished); *White v. Paulsen*, 997 F. Supp. 1380, 1382 (E.D. Wash. 1998).  Similarly, the Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202 (Doc. 105 ¶ 11), creates a certain *remedy* that may be available to litigants, but does not itself create a cause of action.  *See, e.g.*, *Muhammad v. Berreth*, No. C 12-02407 CRB, 2012 WL 4838427, at *5 (N.D. Cal. Oct. 10, 2012) ("Declaratory relief is not an independent cause of action or theory of recovery, only a remedy.  The [Declaratory Judgment Act] does not itself confer federal subject-matter jurisdiction.") (citation and internal quotation marks omitted).

Moreover, because there is no live, concrete controversy regarding whether San Francisco complies with Section 1373, any judicial ruling on that subject would constitute a prohibited advisory opinion.  *See Golden v. Zwickler*, 394 U.S. 103, 108 (1969) ("[T]he federal courts . . . do not render advisory opinions. . . . This is as true of declaratory judgments as any other field.").

1    Plaintiff's contention that an "actual controversy exists between San Francisco and Defendants

2    about whether [the City's] laws comply with Section 1373" (Doc. 105 ¶ 147) is conclusory and

3    inaccurate.  San Francisco does not allege that the Secretary has designated it or threatened to

4    designate it as a "sanctuary jurisdiction" pursuant to Section 9(a), nor that DOJ or DHS has

5    deprived it or threatened to deprive it of any federal funds thereunder.  "For a declaratory

6    judgment to issue, there must be a dispute which calls, not for an advisory opinion upon a

7    hypothetical basis, but for an adjudication of present right upon established facts."  *Ashcroft v.*

8    *Mattis*, 431 U.S. 171, 172 (1977) (internal quotation marks omitted).

9    III.    Plaintiff Fails to State Any Viable Claim Regarding the Executive Order,
10                 Which Is an Internal Directive and Does Not Directly Affect the Plaintiff

11           The Court should dismiss all of San Francisco's challenges to Executive Order 13,768 –

12   counts two and three of the Second Amended Complaint – because the Order only directs internal

13   Executive Branch policy and does not directly affect the plaintiff.  Courts in this Circuit have

14   distinguished between Executive Orders that only "implement policy as a product of executive

15   authority," and those that effectuate an authority explicitly vested in the President through an act

16   of Congress.  *See Chen v. Schiltgen*, No. C-94-4094 MHP, 1995 WL 317023, at *5 (N.D. Cal.

17   May 19, 1995), *aff'd sub nom. Chen v. INS*, 95 F.3d 801 (9th Cir. 1996); *Legal Aid Soc'y of*

18   *Alameda County v. Brennan,* 608 F.2d 1319, 1330 n.14 (9th Cir. 1979).

19           The former type of Executive Order does not carry the independent force of law; rather, it

20   serves only as an internal Executive Branch directive.  The Executive Order in this action falls

21   into that category.  This is even clearer in light of the AG Memorandum, which indicates that the

22   challenged provisions of the Order are directives to the Attorney General and the Secretary of

23   Homeland Security regarding their exercise of *existing* statutory and constitutional authority.  AG

24   Mem. at 1-2.  Because the Order is an internal Executive Branch policy directive, San Francisco

25   cannot plead viable challenges against it.  *Cf. United States v. Pickard*, 100 F. Supp. 3d 981, 1011

26   (E.D. Cal. 2015) (rejecting a Tenth Amendment challenge to a statement of agency policy on the

27   grounds that a policy statement "is a very different creature from a statute" in that it does not bind

28   States as would a statute).

Motion to Dismiss; Memorandum                    12
No. 3:17-cv-00485-WHO

1    Moreover, consistent with its internal nature, the Executive Order does not directly affect

2    the plaintiff.  It does not impose conditions on federal grants or any requirements on state or local

3    jurisdictions.  Rather, the Order "establish[es] immigration enforcement as a priority for this

4    Administration," AG Mem. at 1, in an effort to "ensure that our Nation's immigration laws are

5    faithfully executed."  Exec. Order 13,768 at 1.  It directs the appropriate executive officials to

6    prioritize means for achieving that priority.

7    At no point, however, does the Order purport to directly impose affirmative obligations on

8    state or local jurisdictions.  Rather, the Attorney General and the Secretary are to enforce the

9    Order's directives "to the extent permitted by law."  Exec. Order 13,768, § 9(a).  Consistent with

10   that directive, the Executive Order "does not call for the imposition of grant conditions that would

11   violate any applicable constitutional or statutory limitation . . . [n]or does the Executive Order

12   purport to expand the existing statutory or constitutional authority of the Attorney General and

13   the Secretary . . . in any respect."  AG Mem. at 1-2.  Rather, in the event the Secretary or the

14   Attorney General determines to impose obligations on a grant program pursuant to the directives

15   contained the Order, such as certification of compliance with 8 U.S.C. § 1373, that obligation

16   may be imposed only where existing legal authority allows, and only where grantees are given

17   "notice of their obligation[s]."  *Id.* at 2.

18   IV.   Plaintiff Fails to State Any Viable Claim Regarding the Grant
           Eligibility Provision, as Elucidated by the AG Memorandum
19

20   Regarding the merits, Count Two of plaintiff's Second Amended Complaint alleges that

21   the grant eligibility provision in Section 9(a) of the Executive Order violates the constitutional

22   Separation of Powers, the Spending Clause, and the Tenth Amendment.  Especially as elucidated

23   by the AG Memorandum, this provision of the Order is consistent with all of those constitutional

24   provisions.

25   Plaintiff's claims regarding the grant eligibility provision are all the more difficult to

26   sustain because these are facial challenges to an Executive Order.  The Supreme Court has held

27   that a facial challenge is "the most difficult challenge to mount successfully."  *United States v.*

28

1   *Salerno*, 481 U.S. 739, 745 (1987).  In this context, "the challenger must establish that no set of

2   circumstances exists under which the [challenged enactment] would be valid."  *Id*.

3   As the Supreme Court has observed, "[f]acial challenges are disfavored for several

4   reasons."  *Washington State Grange v. Washington State Republican Party*, 552 U.S. 442, 450

5   (2008).  First, "[c]laims of facial invalidity often rest on speculation.  As a consequence, they

6   raise the risk of premature interpretation of [enactments] on the basis of factually barebones

7   records." *Id*. (internal quotation marks omitted).  Additionally, such challenges "run contrary to

8   the fundamental principle of judicial restraint that courts should neither anticipate a question of

9   constitutional law in advance of the necessity of deciding it nor formulate a rule of constitutional

10  law broader than is required by the precise facts to which it is to be applied."  These rules apply to

11  Executive Orders as much as to statutes and regulations.  *See Am. Fed'n of State, Cty. & Mun.*

12  *Employees v. Scott*, 717 F.3d 851, 862-63 (11th Cir. 2013); *NTEU v. Bush*, 891 F.2d 99, 101 (5th

13  Cir. 1989).  As further discussed below, San Francisco's Second Amended Complaint fails to

14  establish that Section 9 of the Executive Order would be invalid under all circumstances.

15      A.      Plaintiff Fails to State a Viable Claim that the Grant
                Eligibility Provision Violates the Separation of Powers

16

17  Count Two alleges that the grant eligibility provision violates the Separation of Powers by

18  "[e]xercising Spending Power that the Constitution grants to Congress" (Doc. 105 ¶ 153).  Article

19  I of the Constitution confers on Congress the authority to "lay and collect Taxes, Duties, Imposts

20  and Excises, to pay the Debts and provide for the common Defence and general Welfare of the

21  United States."  U.S. Const. Art. I, § 8, cl. 1.  As this Court has said, Congress may, "[i]ncident

22  to" its spending power, "attach conditions on the receipt of federal funds," *Cty. of Santa Clara v.*

23  *Trump*, No. 17-CV-00485-WHO, 2017 WL 1459081, at *21 (N.D. Cal. Apr. 25, 2017) (quoting

24  *Dole*, 483 U.S. at 206), and "Congress can delegate some discretion to the President to decide

25  how to spend appropriated funds" so long as "any delegation and discretion is cabined by

26  [relevant] constitutional boundaries."  2017 WL 1459081, at *21; *see DKT Mem'l Fund Ltd. v.*

27  *AID*, 887 F.2d 275, 280-81 (D.C. Cir. 1989) (upholding conditions on spending imposed by

28

1    President where statute authorized President to set certain "terms and conditions as he may

2    determine").

3        Especially as elucidated by the AG Memorandum, the grant eligibility provision in

4    Section 9(a) is consistent with this division of constitutional responsibilities.  The Executive

5    Order requires the Attorney General and Secretary of Homeland Security to condition grant

6    eligibility on compliance with 8 U.S.C. § 1373 "to the extent consistent with law."  The AG

7    Memorandum makes clear that the Order does not "purport to expand the existing statutory or

8    constitutional authority of the Attorney General and the Secretary . . . in any respect" and "does

9    not call for the imposition of grant conditions that would violate any applicable constitutional or

10   statutory limitation."  AG Mem. at 1-2.  Even more specifically, the Memorandum confirms that

11   compliance with Section 1373 will be imposed as a condition of grant eligibility only where the

12   agency "is statutorily authorized to impose such a condition."  *Id*.

13       In fact, Congress has frequently authorized agencies administering certain grant programs

14   to impose discretionary conditions on the receipt of funds.  Those statutory authorizations have

15   taken a variety of forms, including authorizing an agency to ensure that a grant recipient complies

16   "with all provisions of . . . applicable Federal laws," *see* 42 U.S.C. § 3752(a)(5)(D) (governing

17   DOJ grant program), or allowing an agency to "plac[e] special conditions" on certain grants under

18   appropriate circumstances.  *See id*. § 3712(a).   Pursuant to these types of statutory authorizations,

19   DOJ has already conditioned eligibility for participation in three DOJ-administered grant

20   programs on the applicant's certification of compliance with Section 1373.  *See generally* Tr. of

21   Oral Arg. at 35:4-6, *City & Cnty. of San Francisco v. Trump*, No. 3:17-cv-00485 (N.D. Cal. Apr.

22   14, 2017) (identifying the three programs); 2017 WL 1459081, at *4 (same).

23       Further, as noted above, a party challenging the facial constitutionality of an Executive

24   Order must establish that the Order would be unconstitutional in all its applications.  *See Salerno*,

25   481 U.S. at 745 (facial challenge must establish that "no set of circumstances exists under which

26   [the enactment] would be valid"); *see also Am. Fed'n of State, Cty. & Mun. Employees*, 717 F.3d

27   at 862-63; *NTEU v. Bush*, 891 F.2d at 101.  That standard is necessarily impossible to meet in

28

relation to plaintiff's Separation of Powers claim, since Congress frequently authorizes the Executive to impose discretionary conditions on the receipt of federal grants.

Therefore, especially in light of the AG Memorandum, plaintiff cannot state a viable claim for violation of the constitutional Separation of Powers.

### B. Plaintiff Fails to State a Viable Claim that the Grant Eligibility Provision Exceeds the Spending Power

Count Two in plaintiff's Second Amended Complaint also alleges that the grant eligibility provision exceeds the federal power under the Spending Clause (Doc. 105 ¶¶ 78-84).  This Clause provides that Congress may "lay and collect Taxes, Duties, Imposts and Excises, to pay the Debts and provide for the common Defence and general Welfare of the United States."  U.S. Const. art. I, § 8, cl. 1.  As the Supreme Court has held, "Congress may attach conditions on the receipt of federal funds, and has repeatedly employed the power to further broad policy objectives by conditioning receipt of federal moneys upon compliance by the recipient with federal statutory and administrative directives."  *S. Dakota v. Dole*, 483 U.S. 203, 206 (1987) (internal quotation marks omitted).

The Court in *Dole* described certain limitations or potential limitations on the spending power.  Most basically, "the exercise of the spending power must be in pursuit of 'the general welfare'" – as stated in the Spending Clause itself, *id*. at 207 – and conditions on the receipt of federal funds must be stated "unambiguously" so that recipients can "exercise their choice knowingly, cognizant of the consequences of their participation."  *Id*. (citing *Pennhurst State Sch. & Hosp. v. Halderman*, 451 U.S. 1, 17 (1981) ("The legitimacy of Congress' power to legislate under the spending power thus rests on whether the State voluntarily and knowingly accepts the terms of the 'contract.'  There can, of course, be no knowing acceptance if a State is unaware of the conditions or is unable to ascertain what is expected of it.") (citations omitted) (hereinafter *Pennhurst*).  Additionally, the Court observed in *Dole*, "our cases have suggested (without significant elaboration) that conditions on federal grants might be illegitimate if they are unrelated to the federal interest in particular national projects or programs," and that "in some circumstances the financial inducement offered by Congress might be so coercive as to pass the

1    point at which pressure turns into compulsion." 483 U.S. at 207-08, 211 (internal quotation

2    marks omitted).  And finally, the Court said that "other constitutional provisions may provide an

3    independent bar to the conditional grant of federal funds."  *Id*. at 207-08.

4          Although these are limitations on *congressional* power, the plaintiff herein alleges that the

5    grant eligibility provision in the Executive Order "purports to exercise Spending Power in ways

6    that even Congress could not" (Doc. 105 ¶ 78).  Specifically, the City alleges that the provision

7    imposes "new funding conditions on existing federal funds"; that it imposes "conditions not

8    germane to the purpose of the funds"; that it imposes conditions "so severe as to coerce

9    compliance"; and that it imposes conditions that "require jurisdictions to act unconstitutionally"

10   (*id*. ¶ 153).  Particularly in light of the AG Memorandum, each of these assertions is without

11   merit.

12         Focusing on the "knowing acceptance" aspect of *Dole* and *Pennhurst*, San Francisco

13   asserts, first, that the grant eligibility provision unconstitutionally imposes "new funding

14   conditions on existing federal funds" rather than imposing such conditions "in advance" (*id*.

15   ¶¶ 79, 153).[4]  *See* 2017 WL 1459081, at *22 ("Because states must opt-in to a federal program

16   willingly, fully aware of the associated conditions, Congress cannot implement new conditions

17   after-the-fact.").  As described above, however, the AG Memorandum makes clear that the grant

18   eligibility provision will be implemented by "requiring jurisdictions applying for certain [DOJ]

19   grants to certify their compliance with federal law, including 8 U.S.C. § 1373, as a condition for

20   receiving an award."  AG Mem. at 2.  Thus, the AG Memorandum continues, "[a]ll grantees will

21   receive notice of their obligation to comply with section 1373" ahead of time, and the grant

22   eligibility provision will be applied to "[a]ny jurisdiction that fails to certify compliance."  *Id*.

23   Necessarily, therefore, potential grantees will be able to "exercise their choice knowingly,

24   cognizant of the consequences of their participation" in grant programs that include this

25   condition.  *Dole*, 483 U.S. at 207.  The plaintiff cannot show that the grant eligibility provision

26

27          [4] Plaintiff does not allege that the grant eligibility provision violates the requirement that
     federal grant conditions be stated "unambiguously."  *Dole*, 483 U.S. at 207.  In any event, for the
28   reasons stated herein, any such claim would be without merit in light of the AG Memorandum.

1  will fail this aspect of *Dole* in all its applications, as necessary in this facial challenge.  *See*

2  *Salerno*, 481 U.S. at 745.

3  Second, plaintiff alleges that the grant eligibility provision imposes conditions that are

4  "not germane to the purpose of the funds" (Doc. 105 ¶ 153).  As the Court of Appeals has

5  observed, however, this aspect of *Dole* suggests only a "possible ground" for invalidating an

6  enactment, and does not impose an "exacting standard":

7
> The Supreme Court has suggested that federal grants conditioned on compliance
8  > with federal directives *might* be illegitimate if the conditions share no relationship
> to the federal interest in particular national projects or programs.  This possible
9  > ground for invalidating a Spending Clause statute, which only suggests that the
> legislation *might* be illegitimate without demonstrating a nexus between the
10 > conditions and a specified national interest, is a far cry from imposing an exacting
> standard for relatedness.
11

12 *Mayweathers v. Newland*, 314 F.3d 1062, 1067 (9th Cir. 2002) (citing *Dole*, 483 U.S. at 207).

13 Thus, conditions on federal funding must only "bear some relationship to the purpose of the

14 federal spending."  314 F.3d at 1067 (quoting *New York v. United States*, 505 U.S. 144, 167

15 (1992)); *see Barbour v. Washington Metro. Area Transit Auth.*, 374 F.3d 1161, 1168 (D.C. Cir.

16 2004) (noting that Supreme Court has never "overturned Spending Clause legislation on

17 relatedness grounds").

18 Especially as implemented by the AG Memorandum, the grant eligibility provision easily

19 meets this standard.  The provision will be applied only to grants administered by the Department

20 of Justice and the Department of Homeland Security – that is, the primary law enforcement

21 agency of the United States and the agency responsible for the admission and removal of non-

22 citizens.  AG Mem. at 1.  DHS is the very agency whose communication with state and local

23 government officials is protected by Section 1373.  Moreover, the grant eligibility provision will

24 be applied only to "certain . . . grants" as to which the agency "is statutorily authorized to impose

25 such a condition."  *Id*. at 2.  Plaintiff alleges that the grant eligibility provision "threatens funds

26 that support vital services," including health care, social services, public transportation, and

27 housing (Doc. 105 ¶¶ 10, 104-126).  The AG Memorandum has eliminated any possibility that the

28

grant eligibility provision could be applied in relation to any of those categories of federal

funding.

Third, plaintiff alleges that the grant eligibility provision imposes conditions "so severe as

to coerce compliance" (Doc. 105 ¶ 153).  As the Court of Appeals has observed, however, the

Supreme Court in *Dole* concluded that it would find a violation of this potential limitation, "if

ever, [only] in the most extraordinary circumstances."  *State of Cal. v. United States*, 104 F.3d

1086, 1092 (9th Cir. 1997) (citing *Dole,* 483 U.S. at 210-11).  Thus, for example, the Court in

*Dole* found no constitutional violation where a State risked losing 5% of its highway funds for

refusing to implement a federal minimum drinking age.  *Dole*, 483 U.S. at 211.  Conversely, the

Court held more recently that Congress violated anti-coercion principles by subjecting States to a

risk of losing "all federal Medicaid funding," which constituted "over 10 percent of a State's

overall budget," if they declined to adopt certain Medicaid expansion actions.  *See Nat'l Fed'n of*

*Indep. Bus. v. Sebelius*, 132 S. Ct. 2566, 2664 (2012) (hereinafter *NFIB*).  In that case, "the sheer

size of this federal spending program in relation to state expenditures" rendered the condition

coercive.  *Id.* at 2663.  As the Court held, however, "courts should not conclude that [an enact-

ment] is unconstitutional on this ground unless the coercive nature of an offer is unmistakably

clear."  *Id.* at 2662.

Under this precedent, plaintiff's "coerciveness" claim must fail, especially in light of the

AG Memorandum.  As noted already, the grant eligibility provision of the Executive Order "will

be applied solely to [certain] federal grants administered by the Department of Justice or the

Department of Homeland Security, and not to other sources of federal funding."  AG Mem. at 1.

Moreover, DOJ has so far identified only three grant programs whose eligibility will be condi-

tioned on compliance with Section 1373.  *See* Tr. of Oral Arg. at 35:2-9.  Plaintiff's complaint

alleges that it receives funds under one of those programs, but does not allege the amount of

funding involved (Doc. 105 ¶ 53).  In these circumstances, San Francisco has fallen far short of

stating a viable claim that the "coercive nature" of the grant eligibility provision is "unmistakably

clear."  *See NFIB*, 132 S. Ct. at 2662.

1    Fourth and finally, plaintiff alleges that the grant eligibility provision exceeds the

2    spending power by requiring the City to "act unconstitutionally" (Doc. 105 ¶ 153).  The Court in

3    *Dole* emphasized the narrowness on this limitation on the federal spending power, noting that

4    "the 'independent constitutional bar' limitation . . . is not . . . a prohibition on the indirect

5    achievement of objectives which Congress is not empowered to achieve directly."  483 U.S. at

6    210.  Rather, the Court said, this limitation "stands for the unexceptionable proposition that the

7    power may not be used to induce the States to engage in activities that would themselves be

8    unconstitutional.  Thus, for example, a grant of federal funds conditioned on invidiously

9    discriminatory state action or the infliction of cruel and unusual punishment would be an

10   illegitimate exercise of the Congress' broad spending power."  *Id*. at 210-11.

11   The grant eligibility provision does not "induce" San Francisco to violate any such

12   constitutional prohibition.  As stated in the AG Memorandum, that provision merely requires

13   grantees to certify compliance with 8 U.S.C. § 1373, which proscribes prohibiting or restricting

14   the sharing of information with federal immigration authorities.  *See* AG Mem. at 2.  That is not,

15   however, the kind of "independent [constitutional] bar to the conditional grant of federal funds"

16   that the Supreme Court contemplated in *Dole*.  483 U.S. at 207-08.  Plaintiff alleges that the grant

17   eligibility provision will require it to comply with federal immigration detainer requests in

18   violation of the Fourth Amendment to the Constitution (Doc. 105 ¶ 82), but the AG Memoran-

19   dum says nothing about such requests, and, in any event, cooperating with such requests is fully

20   consistent with the Fourth Amendment.  Moreover, the AG Memorandum states affirmatively

21   that the grant eligibility provision "does not call for the imposition of grant conditions that would

22   violate any applicable constitutional or statutory limitation."  AG Mem. at 1-2.  San Francisco

23   cannot show that the grant eligibility provision will require the City to "act unconstitutionally" in

24   all circumstances.  *Cf. Salerno*, 481 U.S. at 745.

25   In short, particularly as elucidated by the AG Memorandum, the grant eligibility provision

26   in the Executive Order is only a "relatively mild encouragement" to comply with Section 1373.

27   483 U.S. at 211.

28

1

2

C.      Plaintiff Fails to State a Viable Claim that the Grant
        Eligibility Provision Violates the Tenth Amendment

3      Further, Count Two in the Second Amended Complaint also alleges that the grant

4  eligibility provision of Section 9(a) violates the Tenth Amendment, which provides that "[t]he

5  powers not delegated to the United States by the Constitution, nor prohibited by it to the States,

6  are reserved to the States respectively, or to the people."  This amendment embodies the principle

7  that the "pre-existing sovereign States" (and their subdivisions) retain their sovereignty under the

8  Constitution and that the federal government may not encroach upon that sovereignty.  *See U.S.*

9  *Term Limits, Inc. v. Thornton*, 514 U.S. 779, 801 (1995); *N.Y. v. United States*, 505 U.S. 144, 156

10 (1992).  San Francisco alleges that the grant eligibility provision violates this principle by

11 "commandeer[ing] state and local officials to enforce federal law" (Doc. 105 ¶ 8).

12     Although "[t]he Federal Government may not compel the States to enact or administer a

13 federal regulatory program" or to "act on the Federal Government's behalf."  *N.Y. v. United*

14 *States*, 505 U.S. 144, 188 (1992); *Nat'l Fed'n of Indep. Bus. v. Sebelius*, 132 S. Ct. 2566, 2627

15 (2012), San Francisco does not explain how the grant eligibility provision could be said to violate

16 this principle.  Moreover, the circumstances here belie any such conclusion.  As noted already,

17 this provision of the Executive Order will be implemented by requiring applicants for certain

18 grants to "certify their compliance with federal law, including 8 U.S.C. § 1373, as a condition for

19 receiving an award.  *See* AG Mem. at 2.  And that condition will be imposed only where author-

20 ized by existing legal authority and only where grantees receive "notice of their obligation."  *Id*.

21 Thus, where, as here, plaintiff's obligation would arise only because of its voluntary acceptance

22 of grants that included the condition, the Federal Government has not commandeered the City,

23 because the City may decline to apply for the specific DOJ or DHS grants to which this condition

24 is attached.  *See Envtl. Def. Ctr., Inc. v. EPA*, 344 F.3d 832, 847 (9th Cir. 2003) ("[A]s long as the

25 alternative to implementing a federal regulatory program does not offend the Constitution's

26 guarantees of federalism, the fact that the alternative is difficult, expensive or otherwise unappeal-

27 ing is insufficient to establish a Tenth Amendment violation.") (internal quotation marks

28 omitted).

Motion to Dismiss; Memorandum                    21
No. 3:17-cv-00485-WHO

Accordingly, San Francisco has not pled a viable claim that the grant eligibility provision violates the Tenth Amendment.

V.     Plaintiff's Claim that the "Appropriate Enforcement Action" Provision
       of Section 9(a) Violates the Tenth Amendment Is Non-Justiciable

Lastly, Count Three of plaintiff's Second Amended Complaint alleges that the Tenth Amendment is violated by the provision in Section 9(a) that instructs the Attorney General to "take appropriate enforcement action against any entity that violates 8 U.S.C. 1373, or which has in effect a statute, policy, or practice that prevents or hinders the enforcement of Federal law." San Francisco characterizes various statements by public officials as meaning that "Defendants interpret a state or local government's decision not to comply with [federal immigration] detainer requests as a 'statute, policy, or practice that prevents or hinders the enforcement of Federal law'" (Doc. 105 ¶ 87).  From this, the City leaps to the conclusion that this provision in Section 9(a) "commandeers state and local governments" in violation of the Tenth Amendment, "compelling them to enforce a federal program by imprisoning individuals subject to removal at the request of the Federal government" (*id.* ¶ 157).  Plaintiff does not allege, however, that the defendants have taken any "enforcement action" against it or have indicated that any such action is imminent. Accordingly, this claim is non-justiciable and must be dismissed under principles of standing and ripeness.

Under Article III of the Constitution, the jurisdiction of the federal courts extends only to "Cases" and "Controversies."  U.S. Const. art. III, § 2, cl. 1.  Matters outside this rubric are "non-justiciable."  *Ore. Bureau of Labor & Indus. ex rel. Richardson v. U.S. W. Commc'ns, Inc.*, 288 F.3d 414, 416 (9th Cir. 2002).  Two principles of justiciability bar jurisdiction over plaintiff's Count Three:  standing and ripeness.  "While standing is concerned with *who* is a proper party to litigate a particular matter, the doctrines of mootness and ripeness determine *when* that litigation may occur."  *Haw. Cty. Green Party v. Clinton*, 14 F. Supp. 2d 1198, 1201 (D. Haw. 1998). Where a plaintiff lacks standing or its claims are unripe, the court lacks jurisdiction.  *See Nat'l Inst. of Family & Life Advocates v. Harris*, 839 F.3d 823, 832 (9th Cir. 2016).

1    To satisfy the "irreducible constitutional minimum" of standing, a plaintiff must

2    demonstrate an "injury in fact," a "fairly traceable" causal connection between the injury and

3    defendant's conduct, and redressability.  *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83,

4    102-03 (1998).  The injury needed for constitutional standing must be "concrete," "objective,"

5    and "palpable," not merely "abstract" or "subjective."  *See Whitmore v. Arkansas*, 495 U.S. 149,

6    155 (1990); *Bigelow v. Virginia*, 421 U.S. 809, 816-17 (1975).  Additionally, the injury must be

7    "certainly impending" rather than "speculative."  *Whitmore*, 495 U.S. at 157, 158.  "[S]tanding is

8    perhaps the most important of [the jurisdictional] doctrines."  *FW/PBS, Inc. v. City of Dallas*, 493

9    U.S. 215, 231 (1990) (internal quotation marks omitted).

10    Constitutional justiciability also requires that a dispute be ripe for judicial consideration –

11    that is, that the challenged action "has been formalized and its effects felt in a concrete way by the

12    challenging parties."  *Abbott Labs. v. Gardner*, 387 U.S. 136, 148-49 (1967).  In other words, "[a]

13    claim is not ripe for adjudication [under the Constitution] if it rests upon contingent future events

14    that may not occur as anticipated, or indeed may not occur at all."  *Texas v. United States*, 523

15    U.S. 296, 300 (1998) (internal quotation marks omitted).

16    In assessing constitutional ripeness in the context of a "pre-enforcement challenge" to a

17    statutory or administrative enactment, the courts consider "both the fitness of the issues for

18    judicial decision and the hardship to the parties of withholding court consideration."  *Abbott*

19    *Labs.*, 387 U.S. at 149.  "A claim is fit for decision if the issues raised are primarily legal, do not

20    require further factual development, and the challenged action is final."  *Standard Alaska Prod.*

21    *Co. v. Schaible*, 874 F.2d 624, 627 (9th Cir. 1989).  In other words, a court considers whether the

22    court and the parties would "benefit from deferring review until the agency's policies have

23    crystallized and the question arises in some more concrete and final form."  *Eagle-Picher Indus.,*

24    *Inc. v. EPA*, 759 F.2d 905, 915 (D.C. Cir. 1985) (internal quotation marks omitted); *see U.S. W.*

25    *Commc'ns v. MFS Intelenet, Inc.*, 193 F.3d 1112, 1119 (9th Cir. 1999) (finding that claim was not

26    fit for decision where administrative proceedings had not concluded and court would "benefit"

27    from outcome of those proceedings).  Finally, "[t]o meet the hardship requirement, a litigant must

28    show that withholding review would result in direct and immediate hardship and would entail

1   more than possible financial loss." *Winter v. California Med. Review, Inc.*, 900 F.2d 1322, 1325

2   (9th Cir. 1989) (internal quotation marks omitted).

3        Applying these standards here, the plaintiff cannot show the "injury in fact" needed for

4   constitutional standing to challenge the "appropriate enforcement action" provision, *Steel Co.*,

5   523 U.S. at 102-03, and this claim is not constitutionally ripe for judicial review, *Abbott Labs.*,

6   387 U.S. at 148-49.  The defendants have taken no enforcement action against San Francisco

7   under Section 9(a) of the Executive Order, and there is no indication that any such action is

8   imminent.  Thus, the plaintiff has not suffered any "concrete" injury due to this provision, and no

9   such injury is "certainly impending." *See Whitmore*, 495 U.S. at 155, 158.  Similarly, since the

10  federal government might never take enforcement action against San Francisco under Section

11  9(a), this claim rests on "contingent future events that . . . may not occur at all," *see Texas*, 523

12  U.S. at 300, and the City cannot show any "direct and immediate hardship" from withholding

13  review, *see Winter*, 900 F.2d at 1325.

14        Nor could the plaintiff allege that the mere possibility of enforcement action has inflicted

15  any cognizable injury.  Indeed, there is always a possibility that the Federal Government may sue

16  a State or local government alleging that the defendant's laws or policies are constitutionally

17  preempted.  *See Arizona v. United States*, 567 U.S. 387, 132 S. Ct. 2492 (2012); *United States v.*

18  *South Carolina*, 720 F.3d 518 (4th Cir. 2013); *United States v. Alabama*, 691 F.3d 1269 (11th

19  Cir. 2012).  This authority exists entirely independent of the Executive Order.  *Id.*  Further, if

20  such action were to occur, the City would have an opportunity at that time to challenge its

21  propriety and merits.

22        Accordingly, Count Three of the Second Amended Complaint should be dismissed for

23  lack of subject matter jurisdiction under Rule 12(b)(1) of the Federal Rules of Civil Procedure.

24                              CONCLUSION

25        For the reasons discussed above, all of plaintiff's claims should be dismissed with

26  prejudice.

27  Dated:  June 6, 2017

28

1

2                                          Respectfully submitted,

3                                          CHAD A. READLER
                                           Acting Assistant Attorney General
4
                                           BRIAN STRETCH
5                                          United States Attorney

6                                          JOHN R. TYLER
                                           Assistant Director
7

8                                          /s/ W. Scott Simpson

9                                          _____
                                           W. SCOTT SIMPSON (Va. Bar #27487)
10                                         Senior Trial Counsel

11                                         Attorneys, Department of Justice
                                           Civil Division, Room 7210
12                                         Federal Programs Branch
                                           Post Office Box 883
13                                         Washington, D.C. 20044
                                           Telephone:   (202) 514-3495
14                                         Facsimile:   (202) 616-8470
                                           E-mail:      scott.simpson@usdoj.gov
15

16                                         COUNSEL FOR DEFENDANTS
                                           DONALD J. TRUMP, President of the
17                                         United States; UNITED STATES OF
                                           AMERICA; JOHN F. KELLY, Secretary of
18                                         Homeland Security; JEFFERSON B.
                                           SESSIONS, III, Attorney General of the
19                                         United States

20

21

22

23

24

25

26

27

28