1  CHAD A. READLER
   Acting Assistant Attorney General
2  BRIAN STRETCH
   United States Attorney
3  JOHN R. TYLER
   Assistant Director
4  W. SCOTT SIMPSON (Va. Bar #27487)
   Senior Trial Counsel
5  Department of Justice, Room 7210
   Civil Division, Federal Programs Branch
6  Post Office Box 883
7  Washington, D.C.  20044
8  Telephone:      (202) 514-3495
   Facsimile:      (202) 616-8470
9  E-mail:         scott.simpson@usdoj.gov
   COUNSEL FOR DEFENDANTS
10 *(See signature page for parties represented.)*

11                    IN THE UNITED STATES DISTRICT COURT

12              FOR THE NORTHERN DISTRICT OF CALIFORNIA

13                        SAN FRANCISCO DIVISION

14

15 | CITY AND COUNTY OF SAN | **REPLY IN SUPPORT OF DEFENDANTS'** |
   | FRANCISCO, | **MOTIONS TO DISMISS** |
16 | | |
   | Plaintiff, | |
17 | v. | Date:      July 12, 2017 |
   | | Time:      2:00 p.m. |
18 | DONALD J. TRUMP, *et al.*, | |
   | Defendants. | No. 3:17-cv-00485-WHO |
19 | | |
20 | COUNTY OF SANTA CLARA, | |
   | Plaintiff, | |
21 | v. | |
22 | DONALD J. TRUMP, *et al.*, | |
   | Defendants. | No. 3:17-cv-00574-WHO |
23 | | |
24 | CITY OF RICHMOND, | |
   | Plaintiff, | |
25 | v. | |
26 | DONALD J. TRUMP, *et al.*, | |
27 | Defendants. | No. 3:17-cv-01535-WHO |

28

Reply: Motions to Dismiss
No. 3:17-cv-00485/00574/01535-WHO

1

## TABLE OF CONTENTS

2

3  TABLE OF AUTHORITIES .................................................................................................... iii

4  INTRODUCTION ................................................................................................................... 1

5  ARGUMENT .......................................................................................................................... 2

6  I.   The AG Memorandum Is an Authoritative Statement on the
       Executive Order within the Executive Branch...................................................... 2

7        A.   The AG Memorandum Is a Formal, Authoritative Statement.................... 2

8        B.   The AG Memorandum Is Consistent With the
9             Executive Order ........................................................................................ 3

10       C.   The AG Memorandum Carries Out Rather than Detracts
              from the Order's Intended Effect ............................................................. 5

11       D.   The Timing of the AG Memorandum Does Not
12            Undermine Its Authoritativeness................................................................ 6

13  II.  Plaintiffs Lack Standing and Their Claims Are Unripe ......................................... 6

14  III. Plaintiffs Fail to State Any Viable Claim Regarding the
        Executive Order, Which Is an Internal Directive and
15      Does Not Necessarily Directly Affect the Plaintiffs.............................................. 9

16  IV.  Plaintiffs Fail to State Any Viable Claim Regarding the Grant
        Eligibility Provision, as Elucidated by the AG Memorandum ............................ 10

17       A.   Plaintiffs Must Establish that the Grant Eligibility Provision
18            Is Unconstitutional in All Applications .................................................... 11

19       B.   Plaintiffs Fail to State a Viable Claim that the Grant
              Eligibility Provision Violates the Separation of Powers.......................... 13

20       C.   Plaintiffs Fail to State a Viable Claim that the Grant
21            Eligibility Provision Exceeds the Spending Power................................... 14

22       D.   Richmond and San Francisco Fail to State a Viable Claim that
              the Grant Eligibility Provision Violates the Tenth Amendment.............. 16

23       E.   Richmond and Santa Clara County Fail to State a Viable Claim
24            of Unconstitutional Vagueness under the Due Process Clause................ 17

25       F.   Santa Clara County Fails to State a Viable Claim
              Regarding Procedural Due Process........................................................... 18

26       G.   Richmond Fails to State a Viable Claim
27            Under the Fourth Amendment ................................................................. 19

28

1

V.      Richmond and San Francisco Fail to State a Viable Claim for
        Declaratory Relief Regarding Their Compliance with Section 1373 ................... 20

CONCLUSION ............................................................................................................................ 21

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

<u>TABLE OF AUTHORITIES</u>

2

3

<u>CASES</u>

4

*Abel v. United States*,  362 U.S. 217 (1960) ............................................................... 20

5

*Alphonsus v. Holder*, 705 F.3d 1031 (9th Cir. 2013)...................................................... 17

6

*Arizona v. United States*, 567 U.S. 387 (2012) .............................................................. 6

7

*Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564 (1972)......................................... 19

8

*Chen v. Schiltgen*, No. C-94-4094 MHP, 1995 WL 317023 (N.D. Cal. May 19, 1995) ................ 9

9

10

*City of Los Angeles v. Patel*, 135 S. Ct. 2443 (2015)..................................................... 12

11

*Cty. of Santa Clara v. Trump*, ___ F. Supp. 3d ___, No. 17-CV-00485-WHO,
    2017 WL 1459081 (N.D. Cal. Apr. 25, 2017)....................................................... 7

12

13

*Doran v. Houle*, 721 F.2d 1182 (9th Cir. 1983)............................................................ 19

14

*Fox-Quamme v. Health Net Health Plan of Or., Inc*., No. 3:15-CV-01248-BR,
    2016 WL 1724358 (D. Or. Apr. 29, 2016) ........................................................... 20

15

*Galarza v. Szalczyk*, 745 F.3d 634 (3d Cir. 2014) ......................................................... 8

16

*Gonzales v. Carhart*, 550 U.S. 124 (2007) .................................................................. 13

17

*Heggestad v. Dep't of Justice*, 182 F. Supp. 2d 1 (D.D.C. 2000)...................................... 3

18

19

*Humanitarian Law Project v. U.S. Treasury Dep't*, 578 F.3d 1133 (9th Cir. 2009) ................... 17

20

*Jackson v. City & County of San Francisco*, 746 F.3d 953 (9th Cir. 2014) ................... 13

21

*Jim C. v. United States*, 235 F.3d 1079 (8th Cir. 2000)................................................. 16

22

*Lanier v. City of Woodburn*, 518 F.3d 1147 (9th Cir. 2008) ................................... 11, 12

23

*Legal Aid Soc'y of Alameda Cty. v. Brennan,* 608 F.2d 1319 (9th Cir. 1979)................................ 9

24

*Lindsey v. Tacoma-Pierce Cty. Health Dep't*, 195 F.3d 1065 (9th Cir. 1999) .............................. 4

25

26

*La. Mun. Police Employees' Ret. Sys. v. Wynn*, 829 F.3d 1048 (9th Cir. 2016)........................... 7

27

*Mayweathers v. Newland*, 314 F.3d 1062 (9th Cir. 2002) ........................................... 15

28

*Miss. Comm'n on Envtl. Quality v. EPA*, 790 F.3d 138 (D.C. Cir. 2015) ..................................... 16

*Muhammad v. Berreth*, No. C 12-02407 CRB, 2012 WL 4838427
   (N.D. Cal. Oct. 10, 2012) .......................................................................................... 20

*Navarro v. Block*, 250 F.3d 729 (9th Cir. 2001) ............................................................ 7

*New York v. United States*, 505 U.S. 144 (1992) ......................................................... 15

*Planned Parenthood Ariz., Inc. v. Brnovich*, 172 F. Supp. 3d 1075 (D. Ariz. 2016) .................... 6

*S. Dakota v. Dole*, 483 U.S. 203 (1987) ............................................................. 11, 14

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308 (2007) ................................. 7

*United States v. Ehrlichman*, 546 F.2d 910 (D.C. Cir. 1976) ....................................... 3

*United States v. Pickard*, 100 F. Supp. 3d 981 (E.D. Cal. 2015) .................................. 9

*United States v. Salerno*, 481 U.S. 739 (1987) ........................................... 1, 11, 17, 20

*Valle del Sol Inc. v. Whiting*, 732 F.3d 1006 (9th Cir. 2013) ..................................... 18

*Vill. of Hoffman Estates v. Flipside, Hoffman Estates, Inc.,* 455 U.S. 489 (1982) ................. 17

*Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442 (2008) ........................ 12

*Williams v. Cty. of Alameda*, 26 F. Supp. 3d 925 (N.D. Cal. 2014) ................................ 6

*Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579 (1952) ...................................... 10

STATUTES

8 U.S.C. § 1103(a)(1) ........................................................................... 3, 14

8 U.S.C. § 1226 ..................................................................................... 20

8 U.S.C. § 1231 ..................................................................................... 20

28 U.S.C. § 512 .................................................................................... 2, 3

28 U.S.C. § 516 ...................................................................................... 3

REGULATIONS

2 C.F.R. § 200.341 ................................................................................. 19

28 C.F.R. § 0.5(c) .......................................................................................... 1, 2, 3, 14

28 C.F.R. pt. 18 ...................................................................................................... 19

EXECUTIVE ORDERS

Exec. Order No. 10,340, 17 Fed. Reg. 3139 (1952) ...................................... 10

Exec. Order No. 13,129, 64 Fed. Reg. 36,759 (1999) ................................... 10

Exec. Order No. 13,466, 73 Fed. Reg. 36,787 (2008) ................................... 10

Exec. Order No. 13,768, 82 Fed. Reg. 8,799 (2017) ................................. 4, 5, 11, 13, 15

OTHER AUTHORITIES

Mem. from Att'y Gen. for All Dep't Grant-Making Components (May 22, 2017) .............. passim

1

INTRODUCTION

2          Plaintiffs devote much of their opposition briefs to attempting to undermine the Attorney

3   General's Memorandum of May 22, 2017 ("AG Memorandum").  This is perhaps unsurprising

4   given the Memorandum's conclusive effect.  As an authoritative statement on the key provisions

5   of Executive Order 13,768, the AG Memorandum eliminates the supposed "budgetary uncer-

6   tainty" on which Plaintiffs primarily base their assertions of standing and ripeness.  The AG

7   Memorandum also bolsters the conclusion that the Executive Order is consistent with the

8   Constitution.

9          Indeed, the AG Memorandum is authoritative because it is a formal statement by the

10  Cabinet official responsible for "[f]urnish[ing] advice and opinions . . . on legal matters to the

11  President and the Cabinet and to the heads of the executive departments and agencies of the

12  Government."[1]  Every aspect of the AG Memorandum is supported by language in the Executive

13  Order, the goal of which is to establish a policy of faithful enforcement of federal immigration

14  law.  Consistent with that purpose, the AG Memorandum clarifies that the grant eligibility

15  provision in Section 9(a) of the Order will be applied only where the Department of Justice and

16  the Department of Homeland Security are statutorily authorized to do so.  In short, the Executive

17  Order and the AG Memorandum simply apply existing law.

18          Especially in light of the AG Memorandum, the Executive Order is consistent with the

19  constitutional Separation of Powers, the Spending Clause, the Tenth Amendment, and the other

20  constitutional provisions cited in Plaintiffs' complaints.  This is especially true given that Plain-

21  tiffs challenge the Order on its face, "the most difficult challenge to mount successfully."  In this

22  context, plaintiffs "must establish that no set of circumstances exists under which the [challenged

23  enactment] would be valid."[2]  Plaintiffs cannot, however, show that the grant eligibility provision

24  would violate the Constitution in all of its applications.  Nor have San Francisco or Richmond

25  identified a right of action to seek a judicial declaration that they comply with 8 U.S.C. § 1373.

26  Finally, there is no live controversy regarding whether they comply with that statute.

27

28          [1] 28 C.F.R. § 0.5(c).
            [2] *United States v. Salerno*, 481 U.S. 739, 745 (1987).

Reply: Motions to Dismiss
No. 3:17-cv-00485/00574/01535-WHO

1    Accordingly, Plaintiffs' claims should be dismissed.

2                                ARGUMENT

3    I.    The AG Memorandum Is an Authoritative Statement
           on the Executive Order within the Executive Branch
4

5          A.    The AG Memorandum Is a Formal, Authoritative Statement

6          Plaintiffs attempt to equate the AG Memorandum with the representations of Defendants'

7    counsel at oral argument on the motions for preliminary injunction, asserting that the Memoran-

8    dum "merely reduces that same . . . argument to writing" (SC Opp. at 9; *see* Richmond Opp. at 9;

9    SF Opp. at 16).  They also argue that the Court has already rejected the "reading" of the Execu-

10   tive Order conveyed in the AG Memorandum (SF Opp. at 16; Richmond Opp. at 8).

11         Plaintiffs fail to acknowledge, however, that the AG Memorandum and the representations

12   of counsel are fundamentally different.  Counsel for Santa Clara County made this very point at

13   oral argument:  "[W]ith all deference, what a Justice Department lawyer down the food chain

14   says, without a declaration, without an affidavit, without any binding effect, is not something that

15   you should consider . . . . I didn't hear that Attorney General Sessions had signed off to this new

16   interpretation."  Tr. of Oral Arg. at 11:9-12, 46:1-3, *City & Cnty. of San Francisco v. Trump*, No.

17   3:17-cv-00485 (N.D. Cal. Apr. 14, 2017).

18         The AG Memorandum is far more than the representation of "a Justice Department lawyer

19   down the food chain."  Nor does it merely "repeat" counsel's representations "in a written form,"

20   as might a letter from counsel (SC Opp. at 1; Richmond Opp. at 9).[3]  Rather, the AG Memoran-

21   dum is a formal, authoritative statement by a member of the President's Cabinet, and the single

22   official ultimately responsible for "[f]urnish[ing] advice and opinions, formal and informal, on

23   legal matters to the President and the Cabinet and to the heads of the executive departments and

24   agencies of the Government."  28 C.F.R. § 0.5(c); *see* 28 U.S.C. § 512 (Attorney General's duty

25   _____

26   [3] Even if the AG Memorandum adopted the arguments of counsel in their entirety, its
     independent legal authority would be unaffected.  The fact that counsel have interpreted the
27   Executive Order consistent with subsequent formal guidance from the Attorney General does not
     in any way undermine the legitimacy or authority of that guidance.  In other words, the fact that
28   the Department of Justice has spoken consistently about the meaning and effect of Executive
     Order 13,768 is not a credible argument against the AG Memorandum.

to advise executive department heads on "questions of law").  The Attorney General is the "chief

legal advisor" to the President, *United States v. Ehrlichman*, 546 F.2d 910, 925 (D.C. Cir. 1976),

and one of the two officials charged with implementing Section 9 of the Executive Order.

Moreover, the statute that sets forth the "powers and duties" of the Secretary of Homeland

Security – the other official charged with implementing Section 9 – provides that a

"determination and ruling by the Attorney General with respect to all questions of law shall be

controlling."  8 U.S.C. § 1103(a)(1).[4]  Finally, the Attorney General is responsible for

representing almost all federal agencies in litigation, 28 U.S.C. § 516, such that any position

taken by an agency contrary to the Attorney General's guidance may not be defended in

litigation.

Plaintiffs argue that 28 U.S.C. § 512 and 28 C.F.R. § 0.5(c) cannot apply here because the

Attorney General has delegated his authority thereunder to the Office of Legal Counsel (SF Opp.

at 18; Richmond Opp. at 11).  But "it is well established that the head of an agency retains the

authority to make final decisions for the agency even if he or she delegates the authority to make

these decisions to his or her subordinates."  *Heggestad v. Dep't of Justice*, 182 F. Supp. 2d 1, 9

(D.D.C. 2000).  Plaintiffs also argue that these statutory and regulatory provisions do not apply

here because the AG Memorandum does not contain "legal analysis" (SF Opp. at 17; Richmond

Opp. at 11), but there is no indication in 28 U.S.C. § 512 or 28 C.F.R. § 0.5(c) that an opinion

thereunder must contain any particular kind of "analysis."

B.     The AG Memorandum Is Consistent With the Executive Order

Next, Plaintiffs argue that the AG Memorandum sets forth an "implausible interpretation"

or "reading" of the Executive Order (SC Opp. at 8; SF Opp. at 16) that "contradicts" the Order's

"plain language" (Richmond Opp. at 2).  To the contrary, the Attorney General's statements on

the meaning and implementation of Section 9(a) are fully supported by the language of the Order.

---

[4] The fact that 8 U.S.C. § 1103 is the statute that generally sets forth the Secretary's powers and duties belies plaintiffs' assertion that the Attorney General's authority relates only to "interpreting the INA" or ruling on "a question of immigration law" (SC Opp. at 10; SF Opp. at 18).

1    First, the AG Memorandum provides that the grant eligibility provision applies "solely to

2    federal grants administered by the Department of Justice or the Department of Homeland

3    Security, and not to other sources of federal funding."  AG Mem. at 1.  This is based on the

4    President's instruction that "*the Attorney General and the Secretary*, in their discretion and to the

5    extent consistent with law, shall ensure that jurisdictions that willfully refuse to comply with 8

6    U.S.C. 1373 (sanctuary jurisdictions) are not eligible to receive Federal grants."  Exec. Order No.

7    13,768, § 9(a), 82 Fed. Reg. 8,799 (Jan. 30, 2017) (emphasis added).  If the President had

8    intended to apply that provision to all federal agencies or to all federal grants, he would have said

9    "*all federal agencies*, in their discretion and to the extent consistent with law," or "not eligible to

10   receive *any* Federal grants," respectively.  Nor can it be assumed that the President intended the

11   Attorney General to enforce such a prohibition across all federal agencies; if that had been the

12   intent, there would have been no need to include the Secretary in the same sentence.

13   Further, the fact that Section 2(c) of the Order refers more generally to "Federal funds,"

14   whereas Section 9(a) refers to "Federal grants," *supports* the Attorney General's conclusion that

15   the grant eligibility provision applies only to the latter (SC Opp. at 9; Richmond Opp. at 16).  If

16   the President had intended Section 9(a) to apply to all types of federal funding rather than only

17   grants, he would have repeated the term "Federal funds" in Section 9 rather than changing it to

18   "grants."  *Cf. Lindsey v. Tacoma-Pierce Cty. Health Dep't*, 195 F.3d 1065, 1074 (9th Cir. 1999)

19   (referring to "basic principle of statutory construction that different words in the same statute

20   must be given different meanings").

21   Second, the AG Memorandum provides that the Department of Justice ("DOJ") will

22   require jurisdictions applying for certain DOJ-administered grants "to certify their compliance

23   with federal law, including 8 U.S.C. § 1373," but only where the agency is "statutorily authorized

24   to impose such a condition."  AG Mem. at 2.  This is based on the President's instruction that

25   compliance with Section 1373 be imposed as a grant condition "to the extent consistent with

26   law."  Exec. Order No. 13,768, § 9(a).  That phrase would have been unnecessary – and self-

27   defeating – if the President had intended to impose a grant condition without regard to existing

28   law.  Moreover, although the Order does not expressly authorize the Attorney General and the

1    Secretary to require certification of compliance, that method of "ensuring" non-payment of grant

2    funds to non-compliant jurisdictions is logical and certainly within the "discretion" conferred by

3    the Order.[5]

4         Third, the AG Memorandum states that "[a]ll grantees will receive notice of their

5    obligation to comply with section 1373." AG Mem. at 2. This language, too, is based on the

6    instruction to impose this grant condition "to the extent consistent with law." Exec. Order No.

7    13,768, § 9(a). That phrase would have been superfluous if the President had wanted the

8    Attorney General and the Secretary to disregard the well-established procedures of federal grant-

9    making.[6]

10        C.    The AG Memorandum Carries Out Rather than Detracts
               from the Order's Intended Effect

11

12        Further, Plaintiffs contend that the Court must not credit the AG Memorandum because a

13   directive "merely . . . to exercise authority conferred by other laws" would be without "legal

14   force" (SF Opp. at 1, 17; *see* Richmond Opp. at 8). In Plaintiffs' view, an Executive Order that

15   instructs federal agencies to carry out their responsibilities under existing law would be

16   "meaningless" (SC Opp. at 9).

17        Far from it. Executive Order 13,768 was necessary precisely because the Federal

18   Government previously had failed to "exercise authority conferred by other laws." As stated in

19   the Order itself, federal agencies had "failed to discharge" their responsibilities under the

20   immigration laws "to ensure the removal of aliens who have no right to be in the United States."

21   Exec. Order No. 13,768, § 1. Thus, the express purpose of the Order is to "direct executive

22   departments and agencies . . . to employ all lawful means to enforce the immigration laws of the

23        [5] Santa Clara County asserts that the AG Memorandum is contradicted by the Attorney
24   General's statement that DOJ will "take all lawful steps to claw back any funds awarded to a
     jurisdiction that willfully violates 1373" (SC Opp. at 10; SF Dkt. No. 116-3 at 3). But a grantee's
25   false certification of compliance with Section 1373 would constitute violation of the grant
     conditions, potentially requiring a return of funds.

26        [6] Nor does the AG Memorandum contradict Section 9(c) of the Order (SC Opp. at 9). The
     President can direct the Office of Management and Budget to gather and disseminate information
27   regarding recipients of all federal grants for possible later attention or to affect public perception
     and opinion, while directing specific agencies to use their discretion to impose conditions on
28   certain federal grants, where statutorily authorized.

1  United States." *Id*.  In other words, the Order reversed the policy of prior administrations and,

2  among other things, established a policy of "ensur[ing], to the fullest extent of the law, that a

3  State, or a political subdivision of a State, shall comply with 8 U.S.C. 1373" and other federal

4  statutes.  *Id*. § 9; *see Arizona v. United States*, 567 U.S. 387, 446 (2012) (noting that

5  "immigration enforcement priorities . . . change from administration to administration").

6       Accordingly, the AG Memorandum effectuates the intent of the Executive Order – that is,

7  to direct agencies to exercise existing legal authorities – rather than "abandon[ing]" the Order (SF

8  Opp. at 1).

9
10      D.    The Timing of the AG Memorandum Does Not
           Undermine Its Authoritativeness

11       Lastly, Plaintiffs attack the authoritativeness of the AG Memorandum on the basis that it

12  was issued in the course of litigation and allegedly at the "last minute" (SF Opp. at 4, 19; SC

13  Opp. at 4, 12).  But the timing of the Memorandum is irrelevant.  The fact that it was issued

14  during the course of litigation is attributable to the premature timing of this litigation, not to the

15  Attorney General's timing.  The President signed the Executive Order on January 25, 2017, and

16  the first plaintiff – San Francisco – filed its original complaint six days later, on January 31.  The

17  Order required the Attorney General to take various actions to implement Section 9(a), and, as

18  Defendants indicated in response to Plaintiffs' motions for preliminary injunctions and in the

19  hearing on those motions, those actions had not yet been completed at the time of the hearing.

20  The fact that the Attorney General took action during the course of this ongoing litigation, in the

21  form of the AG Memorandum, does nothing to detract from the authoritativeness of the

22  Memorandum.

23  II.    Plaintiffs Lack Standing and Their Claims Are Unripe

24       Especially in light of the AG Memorandum, Plaintiffs have not satisfied their burden to

25  establish the justiciability of their claims.[7]  *See Planned Parenthood Ariz., Inc. v. Brnovich*, 172

26      [7] San Francisco faults the Defendants (SF Opp. at 5 n.1) for incorporating arguments

27  made in Defendants' Motion for Reconsideration or, in the Alternative, Clarification of the
Court's Order of April 25, 2017, which is currently pending before the Court (SF Dkt. No. 107).

28  The authority on which the City relies, which criticizes the incorporation of arguments made in
connection with "a motion that is not before the Court," *Williams v. Cty. of Alameda*, 26

1    F. Supp. 3d 1075, 1085 (D. Ariz. 2016) ("The plaintiff bears the burden of establishing the

2    existence of a justiciable case or controversy, and must demonstrate standing for each claim he

3    seeks to press and for each form of relief that is sought.") (internal quotation marks omitted).  As

4    San Francisco concedes, "Defendants have not . . . officially declared San Francisco a 'sanctuary

5    jurisdiction,' withheld any funds pursuant to the [grant eligibility provision], or initiated other

6    enforcement action against San Francisco" (SF Opp. at 6).  Those concessions are fatal, and they

7    are true of all three plaintiffs in these cases.

8         The AG Memorandum confirms that Plaintiffs' claims are non-justiciable under these

9    circumstances.  The alleged "budgetary uncertainty" on which Plaintiffs primarily base their

10   assertions of present concrete injury, *Cty. of Santa Clara v. Trump*, ___ F. Supp. 3d ___, No. 17-

11   CV-00485-WHO, 2017 WL 1459081, at *17-19 (N.D. Cal. Apr. 25, 2017), evaporates because

12   (1) the grant eligibility provision will be applied only to grants administered by DOJ and the

13   Department of Homeland Security ("DHS") where the agency has authority to require compliance

14   with 8 U.S.C. § 1373, and (2) grant applicants will receive notice of their obligation to comply

15   with the statute.  *See* AG Mem. at 1-2.  These facts also eliminate any concern that Plaintiffs will

16   be "force[d] to change [their] policies" (Richmond Opp. at 6; *see* SC Opp. at 11, 15; SF Opp. at

17   6).[8]

18        Further, the Executive Order – especially as elucidated by the AG Memorandum – does

19   not "require jurisdictions to comply with detainer requests or face loss of federal funds and other

20

21   F. Supp. 3d 925, 947 (N.D. Cal. 2014), does not apply here, since the motion for reconsideration
     is "before the Court."

22        [8] Although Richmond implies that the Court need only consider the allegations in its
     complaint (Richmond Opp. at 14-20), the AG Memorandum should be considered in relation to

23   both lack of jurisdiction and failure to state a claim.  For example, since a motion under Rule
     12(b)(6) "tests the legal sufficiency" of a complaint, *Navarro v. Block*, 250 F.3d 729, 732 (9th

24   Cir. 2001), the Court should consider outside legal authorities, such as case law, regulations, and
     the AG Memorandum, that bear upon that issue.  The Court should also consider the AG

25   Memorandum under judicial notice, if necessary.  *See La. Mun. Police Employees' Ret. Sys. v.

26   Wynn*, 829 F.3d 1048, 1063 (9th Cir. 2016) ("The Supreme Court has instructed that courts ruling
     on a motion to dismiss 'must consider the complaint in its entirety, as well as other sources courts

27   ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents
     incorporated into the complaint by reference, and matters of which a court may take judicial

28   notice.'") (quoting *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007)).

1    enforcement action" (SF Opp. at 7).  The AG Memorandum specifies that application of the grant

2    eligibility provision will turn on compliance with 8 U.S.C. § 1373, which relates only to the

3    sharing of information.  *See* AG Mem. at 2.  In any event, the Government recently confirmed its

4    position that immigration detainer requests are "voluntary."  *See* Br. of the United States as

5    Amicus Curiae at 22, *Mass. v. Lunn*, No. SJC-12276, 2017 WL 1240651, at *22 (D. Mass. Mar.

6    27, 2017); *see also Galarza v. Szalczyk*, 745 F.3d 634, 639-42 (3d Cir. 2014) (rejecting contention

7    that immigration detainers are mandatory).  San Francisco and San Clara County argue that that

8    confirmation is contradicted by a statement in which they claim the Attorney General said that

9    "failure to comply with detainer requests violates federal law and will render jurisdictions

10   ineligible for DOJ grants under Section 1373" (SF Opp. at 7 n.3).  But that is an inaccurate

11   characterization of the Attorney General's remarks.  Although he said that refusing to comply

12   with detainer requests "frustrate[s] [the] enforcement of immigration laws" and that "jurisdictions

13   seeking or applying for Department of Justice grants [would be required] to certify compliance

14   with 1373," he did not say that non-compliance with detainer requests would constitute non-

15   compliance with Section 1373 (Dkt. 116-3, Ex. C).

16          Finally, San Francisco and Santa Clara County have not established the justiciability of

17   their challenge to the "appropriate enforcement action" provision in Section 9(a).  The Defen-

18   dants have taken no enforcement action against the Plaintiffs under that provision, and there is no

19   indication that any such action is imminent.  In response, San Francisco cites a few general state-

20   ments about sanctuary policies in general and the City's policies in particular – including a

21   statement by a member of Congress (SF Opp. at 8-9).  But those statements do not indicate that

22   any "enforcement action" against the City under Section 9(a) is imminent.  In any event, if the

23   United States were to initiate any judicial action against one of the Plaintiffs outside of Section

24   9(a), the defendant municipality would have an opportunity at that time to challenge the propriety

25   and merits of the action.

26

27

28

1
2

III.     Plaintiffs Fail to State Any Viable Claim Regarding the
         Executive Order, Which Is an Internal Directive and
         Does Not Necessarily Directly Affect the Plaintiffs

3          Assuming Plaintiffs could show the justiciability of their claims, all of the claims

4   challenging Executive Order 13,768 should be dismissed because the Order only directs internal

5   Executive Branch policy and does not directly affect the Plaintiffs absent a finding that they have

6   violated Section 1373.  *See Chen v. Schiltgen*, No. C-94-4094 MHP, 1995 WL 317023, at *5

7   (N.D. Cal. May 19, 1995), *aff'd sub nom. Chen v. INS*, 95 F.3d 801 (9th Cir. 1996); *Legal Aid*

8   *Soc'y of Alameda Cty. v. Brennan*, 608 F.2d 1319, 1330 n.14 (9th Cir. 1979); *see also United*

9   *States v. Pickard*, 100 F. Supp. 3d 981, 1011 (E.D. Cal. 2015).  San Francisco and Santa Clara

10  County attempt to distinguish *Chen* and *Legal Aid Society of Alameda County* on the basis that

11  those cases dealt with whether certain executive orders "create[d] [a] private right of action that

12  can be *enforced* in court," whereas the Plaintiffs here *challenge* an executive order (SF Opp. at

13  13-14; *see* SC Opp. at 16).  But both conclusions proceed from the same rationale:  In each

14  situation, the order is "merely an internal directive from the President to [certain Cabinet

15  officials], instructing them to exercise their statutory authority."  *Chen*, 1995 WL 317023, at *6.

16  If there is no private right of action to enforce an internal directive, then there cannot possibly be

17  a private right of action to challenge it, either.[9]

18         Richmond argues that Executive Order 13,768 "contains no language suggesting it was

19  intended to be merely an internal directive" (Richmond Opp. at 11).  Yet all of the Order's

20  mandates are directed at federal officials.  Section 4 – the first section after the provisions on

21  policy and definitions – "direct[s] agencies to employ all lawful means to ensure the faithful

22  execution of the immigration laws of the United States against all removable aliens."  Section 9

23  sets forth instructions to the Attorney General, the Secretary of Homeland Security, and the

24  Director of the Office of Management and Budget.  Except for statements of purpose, policy, and

25  the general construction of the Order (Sections 3 and 18), every section and subsection sets forth

26
27
28

---

[9] San Francisco also seeks to distinguish *United States v. Pickard*, 100 F. Supp. 3d 981 (E.D. Cal. 2015).  Plaintiff recognizes, however, that the court in *Pickard* rejected a challenge to an internal memorandum that "described . . . enforcement priorities" (SF Opp. at 14 n.5).  Like that memorandum, the Executive Order here sets forth "enforcement priorities."

instructions to one or more federal officials.  In sharp contrast to Executive Order 13,768, other orders have contained more than internal directives.  One example is Executive Order 13,129, which prohibited "any transaction or dealing by United States persons . . . in property or interests in property" of the Taliban.  64 Fed. Reg. 36,759, § 2(a) (1999).  Another example is Executive Order 13,466, which provided that "United States persons may not register a vessel in North Korea . . . or own, lease, operate, or insure any vessel flagged by North Korea."  73 Fed. Reg. 36,787, § 2 (2008).  Unlike the Executive Order involved here, those Orders were not merely internal directives.

Finally, San Francisco argues that *Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579 (1952), supports this challenge to Executive Order 13,768 because the order struck down there "was similarly framed as a directive to an Executive Branch official" (SF Opp. at 13).  But the executive order involved in *Youngstown* necessarily affected the plaintiffs in that case very directly, in contrast to the Order involved here.  There, the President directed the Secretary of Commerce to seize the facilities of certain named companies, including those of the plaintiffs.  *See* Exec. Order No. 10,340, § 1, 17 Fed. Reg. 3139 (1952).  Here, in contrast, the Order only directs the Attorney General and the Secretary to focus on certain aspects of their existing authorities.

IV.    Plaintiffs Fail to State Any Viable Claim Regarding the Grant
       Eligibility Provision, as Elucidated by the AG Memorandum

All three of the Plaintiffs challenge the grant eligibility provision under the Separation of Powers and the Spending Clause (although Santa Clara County argues Spending Clause principles only in the context of its Separation of Powers claim).  San Francisco and Richmond allege that the grant eligibility provision violates the Tenth Amendment.  Santa Clara County and Richmond allege that the provision is unconstitutionally vague under the Due Process Clause.  Finally, the County also makes a procedural due process claim, and Richmond also makes a Fourth Amendment claim.  All of these challenges are without merit, especially in light of the AG Memorandum and the high standard for facial challenges.

A.    Plaintiffs Must Establish that the Grant Eligibility Provision
      Is Unconstitutional in All Applications

All of Plaintiffs' claims against the grant eligibility provision challenge its facial constitutionality. As the Supreme Court has said, a facial challenge is "the most difficult challenge to mount successfully"; in this context, "the challenger must establish that no set of circumstances exists under which the [challenged enactment] would be valid." *United States v. Salerno*, 481 U.S. 739, 745 (1987). Plaintiffs argue that the *Salerno* principle does not apply here (SF Opp. at 20-21; SC Opp. at 18-19), but this case fits comfortably within *Salerno*.

In *Salerno* itself, for example, the plaintiffs alleged, among other things, that the Bail Reform Act's procedures for determining whether to impose pretrial detention violated the Due Process Clause on their face. 481 U.S. at 742, 751-52. The Court rejected that challenge, noting that "to sustain [the procedures] against such a challenge, we need only find them adequate to authorize the pretrial detention of at least some persons charged with crimes, whether or not they might be insufficient in some particular circumstances." *Id*. at 751 (citation and internal quotation marks omitted). Applying that standard here, this Court should reject Plaintiffs' facial challenges because the grant eligibility provision can be applied constitutionally to "at least some [jurisdictions]" that "willfully refuse to comply with 8 U.S.C. 1373," Exec. Order No. 13,768, § 9(a). For example, especially in light of the AG Memorandum, there will be "at least some" instances in which the agency has statutory authority to require certification of compliance with Section 1373, the applicant or grantee is aware of the certification requirement beforehand, compliance with Section 1373 is germane to the purposes of the particular grant, and requiring such certification does not violate any "independent [constitutional] bar." *See S. Dakota v. Dole*, 483 U.S. 203, 207-08 (1987).

The Court of Appeals applied *Salerno* to reject a facial challenge in *Lanier v. City of Woodburn*, 518 F.3d 1147 (9th Cir. 2008). There, an applicant for a position at a public library alleged that defendant's policy requiring pre-employment drug testing violated the Fourth Amendment on its face. *Id*. at 1149. Plaintiff argued "that there [was] no set of circumstances under which the City's policy would be constitutional as applied to *every* applicant for *all* jobs."

1    *Id*. at 1150.  The court rejected that argument, holding that "a policy of general applicability is

2    facially valid unless it can *never* be applied in a constitutional manner. . . . As [there is] no

3    concrete reason why [defendant's] policy could not constitutionally be applied to jobs that, for

4    example, require the operation of dangerous equipment," the court continued, "we cannot say that

5    the policy is invalid on its face."  *Id*.  *Lanier* reflects that *Salerno* means exactly what it says:  A

6    plaintiff challenging the facial constitutionality of an enactment must establish that no set of

7    circumstances exists under which the enactment could be applied constitutionally.

8         San Francisco and Santa Clara County argue that *City of Los Angeles v. Patel*, 135 S. Ct.

9    2443 (2015), forecloses applying *Salerno* here (SF Opp. at 21; SC Opp. at 19).  *Patel*, however,

10   involved a situation different from this case.  The plaintiffs there brought a facial Fourth Amend-

11   ment challenge to a city ordinance that required hotel operators to allow law enforcement officers

12   to examine information about their guests on demand.  135 S. Ct. at 2447-48.  The City argued

13   that plaintiffs' challenge necessarily failed *Salerno* because some of the examinations (*i.e.*, Fourth

14   Amendment searches) would be supported by consent, presentation of a warrant, or exigent

15   circumstances.  *Id*. at 2450-51.  The Court rejected that argument, holding that *Salerno* asks

16   whether the challenged enactment "'is unconstitutional in all of *its applications*'" – that is, in

17   those situations where the enactment must actually be applied.  *Id*. at 2451 (quoting *Wash. State*

18   *Grange v. Wash. State Republican Party*, 552 U.S. 442, 449 (2008)) (emphasis added).

19        The Plaintiffs here argue that *Patel* forecloses applying *Salerno* given "the existence of

20   other laws that might allow Defendants to condition specific grants on compliance with Section

21   1373" (SF Opp. at 21; *see* SC Opp. at 19).  But this is fundamentally different from the facts in

22   *Patel*.  Here, the challenged Order, especially as elucidated by the AG Memorandum, directs the

23   Attorney General and the Secretary to condition grants on compliance with Section 1373 only

24   where authorized by statute.  In *Patel*, however, the ordinance required hotel operators to make

25   their records available under all circumstances, not only where independent legal bases existed to

26   require their availability.  Plaintiffs' argument would foreclose applying *Salerno* to any enactment

27   directing officials to apply existing law.

28

Santa Clara County also argues that applying *Salerno* here would be inconsistent with the Court of Appeals' decision in *Jackson v. City & County of San Francisco*, 746 F.3d 953 (9th Cir. 2014). *Jackson*, also, is readily distinguishable from this case. There, plaintiffs brought a facial Second Amendment challenge to an ordinance that required handguns in a residence to be either stored in a locked container, disabled with a trigger lock, or carried by an adult. *Id*. at 958. Defendant argued that the facial challenge was inappropriate because plaintiffs had conceded that "locked storage is appropriate in some circumstances, such as when it is foreseeable that a child would otherwise gain possession of a firearm." *Id*. at 961. The court rejected that argument because the case did not fall within the rationales for the Supreme Court's jurisprudence on facial challenges: Specifically, the challenged ordinance was "not an example of 'complex and comprehensive legislation' which may be constitutional in a broad swath of cases"; and the constitutionality of the ordinance would not "turn on how San Francisco chooses to enforce it." *Id*. at 962 (quoting *Gonzales v. Carhart*, 550 U.S. 124, 168 (2007)).

In contrast, Executive Order 13,768 does fall within those rationales. The Order requires DOJ and DHS to require certification of compliance with Section 1373 where it has authority to do so. Such authority may exist in relation to a "broad swath" of grant programs, and any disappointed applicant or grantee could bring an as-applied challenge in any particular case where one of the agencies applies the grant eligibility provision. Thus, the Ninth Circuit's decision in *Jackson* does not undercut the application of *Salerno* here.

B.    Plaintiffs Fail to State a Viable Claim that the Grant
      Eligibility Provision Violates the Separation of Powers

As noted earlier, all three plaintiffs allege that the grant eligibility provision violates the constitutional Separation of Powers. However, the Executive Order requires the Attorney General and the Secretary to condition grant eligibility on compliance with 8 U.S.C. § 1373 "to the extent consistent with law," Exec. Order No. 13,768, § 9(a), and the AG Memorandum confirms that compliance with Section 1373 will be imposed as a condition of grant eligibility only where the agency "is statutorily authorized to impose such a condition." AG Mem. at 2. This should eliminate any facial Separation of Powers concerns, especially under *Salerno*.

1    In response to these points, Santa Clara County asserts that the AG Memorandum does not

2    apply to the Department of Homeland Security's application of the grant eligibility provision (SC

3    Opp. at 22).[10]  As discussed above, however, the Attorney General is responsible for "[f]urnish-

4    [ing] advice and opinions, formal and informal, on legal matters to the President and the Cabinet

5    and to the heads of the executive departments and agencies of the Government" – including the

6    Secretary of Homeland Security.  28 C.F.R. § 0.5(c).  Also, the statute establishing the Secre-

7    tary's "powers and duties" related to immigration enforcement provides that a "determination and

8    ruling by the Attorney General with respect to all questions of law shall be controlling."  8 U.S.C.

9    § 1103(a)(1).  In any event, the Executive Order itself provides that compliance with Section

10   1373 shall be imposed as a grant condition only "to the extent consistent with law," and an action

11   taken without authority would not be "consistent with law."

12        C.      Plaintiffs Fail to State a Viable Claim that the Grant
13                Eligibility Provision Exceeds the Spending Power

14   All three plaintiffs also allege that the grant eligibility provision violates the Spending

15   Clause, or that it would violate the Spending Clause if enacted by Congress.  Especially in light of

16   the AG Memorandum, the grant eligibility provision states its requirements "unambiguously";

17   applicants and grantees will "exercise their choice knowingly, cognizant of the consequences of

18   their participation" by choosing whether to certify compliance with Section 1373, which is related

19   to at least some grant programs; the provision's "financial inducement" is not "so coercive" as to

20   constitute "compulsion"; and "other constitutional provisions" do not provide an "independent

21   bar."  *S. Dakota v. Dole*, 483 U.S. 203, 207-8, 211 (1987).  The fact that these are facial chal-

22   lenges is especially relevant to this claim, as Plaintiffs cannot show that the condition imposed

23   pursuant to the grant eligibility provision is unrelated to *all* DOJ and DHS grants, that imposition

24

25        [10] Richmond quotes at length from this Court's discussion of the Separation of Powers
26   claims in ruling on the motions for preliminary injunction (Richmond Opp. a 16-17).  But that
     ruling was made before issuance of the AG Memorandum, and, in any event, a court's finding on
27   the probability of success under a motion for preliminary injunction is not a final ruling on the
     merits.  Also, Defendants have asked the Court to reconsider its ruling on the motions for
28   preliminary injunction.

Reply:  Motions to Dismiss                 14
No. 3:17-cv-00485/00574/01535-WHO

1    of that condition will necessarily constitute compulsion, or that all potential applications of the

2    condition will be constitutionally barred.

3        In response, San Francisco argues that the AG Memorandum does not settle the meaning

4    of "sanctuary jurisdictions" because "the Executive Order gives the Secretary – not the Attorney

5    General – the authority and discretion to designate sanctuary jurisdictions" (SF Opp. at 23).

6    However, this argument confuses the elucidation of that term with the responsibility to *designate*

7    individual jurisdictions.  The Order gives the Secretary "the authority to designate, in his discre-

8    tion and to the extent consistent with law, a jurisdiction as a sanctuary jurisdiction."  Exec. Order

9    No. 13,768, § 9(a).  But the AG Memorandum does not "designate" any sanctuary jurisdictions; it

10   only clarifies what the Order says about the meaning of the term – that is, that it "will refer only

11   to jurisdictions that 'willfully refuse to comply with 8 U.S.C. 1373.'"  AG Mem. at 2.  And the

12   Memorandum makes clear that the Secretary was consulted on that issue.

13       San Francisco also argues that the AG Memorandum "does not limit application of the

14   Executive Order to funds related to immigration enforcement, as required to satisfy the nexus

15   requirement" (SF Opp. at 24).  The "relatedness" factor of *Dole* cannot fairly be called a nexus

16   "requirement," however.  As the Court of Appeals has said, "This possible ground for invalidat-

17   ing a Spending Clause statute, which only suggests that the legislation *might* be illegitimate

18   without demonstrating a nexus between the conditions and a specified national interest, is a far

19   cry from imposing an exacting standard for relatedness."  *Mayweathers v. Newland*, 314 F.3d

20   1062, 1067 (9th Cir. 2002).[11]  Thus, conditions on federal funding must only "bear some rela-

21   tionship to the purpose of the federal spending."  *Id*. (quoting *New York v. United States*, 505 U.S.

22   144, 167 (1992)).  Especially in light of *Salerno* and the AG Memorandum, the grant eligibility

23   provision easily meets this standard.  The provision will be applied, "to the extent consistent with

24   law," only to certain grants administered by DOJ and DHS, which are, respectively, the primary

25   federal law enforcement agency and the agency responsible for the admission and removal of

26   non-citizens (and the very agency whose communication with state and local government

27   _____

28   [11] Defendants' motions to dismiss quoted *Mayweathers*, but the parties' opposition briefs
     ignore it.

1    officials is protected by Section 1373).  Any alleged departure from this aspect of *Dole* could be

2    raised in an as-applied challenge.

3         Lastly, Santa Clara County argues that the AG Memorandum does not eliminate

4    coerciveness concerns because it "fails to identify which DHS grants are at issue, and the County

5    relies on DHS grants for [almost] two-thirds of its Office of Emergency Services budget,"

6    amounting to "more than $5 million" for Fiscal Year 2016 (SC Opp. at 21; SC Complaint ¶ 42).

7    This, however, does not state a viable claim for violation of the Spending Clause, especially on a

8    facial challenge.  The County alleges that its annual budget is approximately $6 billion (*id.* ¶ 27),

9    so the alleged DHS grants for the Office of Emergency Services amount to approximately .083

10   percent of the County's overall budget.  By contrast, the Eighth Circuit has held that a State's

11   potential loss of "approximately $250 million or 12 per cent. of the annual state education

12   budget" would not constitute coercion under *Dole*, *see Jim C. v. United States*, 235 F.3d 1079,

13   1082 (8th Cir. 2000), and the D.C. Circuit has held that a State's risk of losing something less

14   than 4% of its overall budget in the form of federal highway funds would not be unconstitu-

15   tionally coercive, *see Miss. Comm'n on Envtl. Quality v. EPA*, 790 F.3d 138, 178 (D.C. Cir.

16   2015).  Either of those potential losses may have amounted to a large proportion of one office's

17   budget.

18        D.   Richmond and San Francisco Fail to State a Viable Claim that the
19             Grant Eligibility Provision Violates the Tenth Amendment

20        San Francisco and Richmond allege that the grant eligibility provision violates the Tenth

21   Amendment.  This provision should cause no concern under the Tenth Amendment, since a

22   grantee's obligation to comply with Section 1373 would arise only because of its voluntary

23   acceptance of a grant that includes the condition, and a jurisdiction can simply decline to apply

24   for such a grant.  San Francisco argues that the AG Memorandum does not eliminate this concern

25   because there is still a threat that the grant eligibility provision might be used to require jurisdic-

26   tions to comply with immigration detainer requests (SF Opp. at 24-25).  As noted earlier,

27   however, the AG Memorandum makes clear that application of the grant eligibility provision will

28   turn on compliance with 8 U.S.C. § 1373, which relates only to the sharing of information.  *See*

1    AG Mem. at 2.  Even if that were not the case, a jurisdiction could avoid any concern about being

2    "commandeered" by declining to apply for a covered grant.

3        Moreover, even if the grant eligibility provision were somehow seen as related to detainer

4    requests, the claim would also fail under *Salerno*.  Some jurisdictions believe that federal detainer

5    requests are appropriate and voluntarily choose to comply with them.  Those jurisdictions are

6    obviously not being "commandeered" in violation of the Tenth Amendment.  Therefore, if the

7    potential for being compelled to comply with such requests is the basis of Plaintiffs' facial Tenth

8    Amendment claim, the claim must be dismissed because they cannot establish that the grant

9    eligibility provision would violate the Tenth Amendment in all its applications.  *See Salerno*, 481

10   U.S. at 745 (facial challenge must establish that "no set of circumstances exists under which [the

11   enactment] would be valid").

12       E.    Richmond and Santa Clara County Fail to State a Viable Claim of
             Unconstitutional Vagueness under the Due Process Clause
13

14       Richmond and Santa Clara County allege that the grant eligibility provision is

15   unconstitutionally vague under the Due Process Clause of the Fifth Amendment.[12]  This is an

16   especially difficult challenge to mount facially.  "Outside the First Amendment context, a plaintiff

17   alleging facial vagueness must show that the enactment is impermissibly vague in all its

18   applications."  *Humanitarian Law Project v. U.S. Treasury Dep't*, 578 F.3d 1133, 1146 (9th Cir.

19   2009) (internal quotation marks omitted).  The plaintiff "'must prove that the enactment is vague

20   not in the sense that it requires a person to conform his conduct to an imprecise but comprehen-

21   sible normative standard, but rather in the sense that no standard of conduct is specified at all.'

22   Put another way, [the challenger] must demonstrate that the 'provision simply has *no* core.'"

23   *Alphonsus v. Holder*, 705 F.3d 1031, 1042 (9th Cir. 2013) (quoting *Vill. of Hoffman Estates v.*

24   *Flipside, Hoffman Estates, Inc.,* 455 U.S. 489, 495 n.7 (1982)).  The AG Memorandum should

25   eliminate any concern under these standards.  Furthermore, as discussed in Part III above, the

26
         ───────────────────

27       [12] Santa Clara County's complaint also alleges that Section 6 of the Executive Order is
     unconstitutionally vague (SC Dkt. No. 1 ¶ 141).  For the reasons stated in Defendants' motion,
28   any such claim should be dismissed (SC Dkt. No. 115 at 19-21 & n.6).  The County's opposition
     does not mention Section 6.

Reply:  Motions to Dismiss                     17
No. 3:17-cv-00485/00574/01535-WHO

1    Executive Order is an internal directive to Executive Branch officials; thus, there can be no

2    legitimate question as to whether it provides a "standard of conduct" for the plaintiffs.

3        Relying on *Valle del Sol Inc. v. Whiting*, 732 F.3d 1006 (9th Cir. 2013), Plaintiffs argue

4    that Defendants cannot "cure a facially unconstitutional statute by adopting an *unreasonable*

5    narrowing interpretation" (SC Opp. at 23; *see* Richmond Opp. at 20).  As discussed above,

6    however, the AG Memorandum is fully consistent with the Executive Order.  For example, the

7    limitation to federal grants rather than other types of funding is reflected in the President's use of

8    "Federal funds" in Section 2 of the Order but "Federal grants" in Section 9(a); the limitation to

9    DOJ and DHS grants is reflected in the President's references to the Attorney General and the

10   Secretary in Section 9(a); and implementing Section 9(a) by requiring grantees to certify

11   compliance with Section 1373 is based on the President's conferral of "discretion" on the

12   Attorney General and Secretary regarding the means of implementing the grant eligibility

13   provision and his instruction to do so "consistent with law."

14       Further, in any event, *Valle del Sol* is very different from this case.  There, a state criminal

15   law prohibited anyone "who is in violation of a criminal offense" from taking certain action, and

16   plaintiffs brought a vagueness challenge focused on the phrase "in violation of a criminal

17   offense."  732 F.3d at 1019.  The State asserted that the phrase should be understood as meaning

18   "in violation of a law or statute," but the court rejected that assertion, finding that the State was

19   proposing "not to adopt a narrowing construction, but rather to replace a nonsensical statutory

20   element with a different element."  *Id*. at 1021.  That is far from the situation here.  No one could

21   argue that the grant eligibility provision is "nonsensical."  The AG Memorandum merely clarifies

22   certain elements that could be understood variously – and in ways that perfectly accord with the

23   Order itself, as discussed above.  Thus, *Valle del Sol* does not support Plaintiffs' vagueness claim.

24       F.   Santa Clara County Fails to State a Viable Claim
               Regarding Procedural Due Process

25

26       Santa Clara County also alleges that the grant eligibility provision violates procedural due

27   process under the Fifth Amendment.  Especially in light of the AG Memorandum, the County

28   does not have a protectable property interest in any grant funds to which the eligibility provision

1  might apply, and, in any event, the applicable grant-making procedures would provide any

2  "process" that is due.  Aside from whether the County might have a "legitimate claim of

3  entitlement" to certain kinds of federal funding, such as Medicaid reimbursements, the County

4  certainly does not have such a claim to discretionary grant funds provided by DOJ and DHS.  *See*

5  *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 577 (1972).  In any event, by specifying that

6  the grant eligibility provision be implemented "consistent with law," Section 9(a) incorporates the

7  applicable procedural requirements for making or revoking federal grants.  *See*, *e.g*., 2 C.F.R.

8  § 200.341 (hearings and appeals in federal grant-making); 28 C.F.R. pt. 18 (DOJ Office of Justice

9  Programs Hearing and Appeal Procedures).

10       In response, the County relies primarily on this Court's ruling on Plaintiff's motion for

11  preliminary injunction (SC Opp. at 24-25).  But that ruling was made without the benefit of the

12  AG Memorandum, and Defendants have asked the Court to reconsider it.  The County also cites

13  *Doran v. Houle*, 721 F.2d 1182 (9th Cir. 1983), for the proposition that it has a legitimate claim

14  of entitlement to "federal funds that Congress has already appropriated and directed to local

15  entities" (SC Opp. at 25).  But that case addressed whether veterinarians had a property interest in

16  permits to perform a certain diagnostic test, 721 F.2d at 1183-84, not whether a jurisdiction might

17  have a property interest in "federal funds that Congress has already appropriated and directed to

18  local entities."

19       G.       Richmond Fails to State a Viable Claim under the Fourth Amendment

20       The final claim regarding the grant eligibility provision is Richmond's claim that the

21  provision violates the Fourth Amendment.  Again, however, application of the grant eligibility

22  provision will turn on compliance with 8 U.S.C. § 1373, which involves the sharing of informa-

23  tion and thus does not create any issue under the Fourth Amendment.  *See* AG Mem. at 2.

24  Moreover, the AG Memorandum also states that the grant eligibility provision "does not call for

25  the imposition of grant conditions that would violate any applicable constitutional or statutory

26  limitation."  *Id*. at 1-2.

27       Further, even aside from those considerations, this claim fails the *Salerno* test.  First, as of

28  April 2, 2017, every detainer request issued by U.S. Immigration and Customs Enforcement

1   ("ICE") is supported not only by a probable cause finding as to removability in the detainer form

2   itself, but also by an administrative warrant issued pursuant to 8 U.S.C. §§ 1226 or 1231, which

3   contains a probable cause finding made by ICE.  *See* ICE, "Detainer Policy" (Mar. 24, 2017),

4   *available at* https://www.ice.gov/ detainer-policy.  By definition, then, all such detainer requests

5   will satisfy the Fourth Amendment, *see, e.g.*, *Abel v. United States*, 362 U.S. 217, 233 (1960),

6   such that a facial challenge cannot succeed.  *See Salerno*, 481 U.S. at 745.  And even without this

7   policy, because detainer requests are generally supported by probable cause findings, Richmond

8   cannot establish that complying with such requests would always violate the Fourth Amendment,

9   as necessary to sustain a facial challenge.  *See id*.  Richmond contends that the Court must accept

10   as true its allegation that the Order "requires Richmond to keep people in custody who would

11   otherwise be released" (Richmond Opp. at 19), but the Plaintiff does not – and cannot – allege

12   that such detention would always violate the Fourth Amendment.

13   V.   Richmond and San Francisco Fail to State a Viable Claim for
14        Declaratory Relief Regarding Their Compliance with Section 1373

15        Aside from Plaintiffs' challenges to the grant eligibility provision in Section 9(a),

16   Richmond and San Francisco seek a judicial declaration that they comply with 8 U.S.C. § 1373.

17   Plaintiffs do not, however, identify a right of action to seek such a declaration, and there is no live

18   controversy regarding whether they comply with Section 1373.

19        Plaintiffs argue that the Declaratory Judgment Act allows them to seek this relief (Rich-

20   mond Opp. at 21; SF Opp. at 10).  "It is well-settled, however, that the Declaratory Judgment Act

21   does not create a stand-alone cause of action."  *Fox-Quamme v. Health Net Health Plan of Or.,*

22   *Inc*., No. 3:15-CV-01248-BR, 2016 WL 1724358, at *1 (D. Or. Apr. 29, 2016); *see Muhammad v.*

23   *Berreth*, No. C 12-02407 CRB, 2012 WL 4838427, at *5 (N.D. Cal. Oct. 10, 2012) ("Declaratory

24   relief is not an independent cause of action or theory of recovery, only a remedy.").  Plaintiffs

25   have not pointed to any statute that provides a right of action to seek a declaration regarding their

26   compliance with Section 1373.

27        Nevertheless, San Francisco asserts that it can seek such a declaration because the United

28   States "could bring civil preemption actions against jurisdictions to enforce Section 1373" (SF

1   Opp. at 10).  The right of the United States to bring a preemption suit, however, is based on the

2   Supremacy Clause of the Constitution.  San Francisco has no such right.  Furthermore, the issue

3   involved in a federal preemption suit is fundamentally different from the cause of action that

4   Plaintiffs seek to assert:  In a federal preemption action brought by the United States, the issue is

5   whether a State or local government's law or action is constitutionally preempted by federal law.

6   If the court finds that the law or action is preempted, it is enjoined.  In Plaintiff's proposed action,

7   by contrast, the issue would be whether a local government's law violates a federal law.  The

8   Constitution requires the existence of the first kind of action, but not the second.

9          Lastly, there is no live controversy regarding whether Richmond or San Francisco

10   complies with Section 1373.  Plaintiffs allege that they do not comply with immigration detainer

11   requests or otherwise cooperate with federal immigration authorities.  But the Defendants have

12   not taken a position on whether Richmond or San Francisco complies with Section 1373.

13                                         CONCLUSION

14          For the reasons discussed above and in Defendants' motions to dismiss, all of Plaintiffs'

15   claims should be dismissed.

16   Dated:  June 29, 2017

17                                              Respectfully submitted,

18
                                               CHAD A. READLER
19                                             Acting Assistant Attorney General

20
                                               BRIAN STRETCH
21                                             United States Attorney

22                                             JOHN R. TYLER
                                               Assistant Director
23

24                                             /s/ W. Scott Simpson

25                                             _____
                                               W. SCOTT SIMPSON (Va. Bar #27487)
26                                             Senior Trial Counsel

27

28

Reply:  Motions to Dismiss                          21
No. 3:17-cv-00485/00574/01535-WHO

Attorneys, Department of Justice
Civil Division, Room 7210
Federal Programs Branch
Post Office Box 883
Washington, D.C. 20044
Telephone:   (202) 514-3495
Facsimile:   (202) 616-8470
E-mail:       scott.simpson@usdoj.gov

COUNSEL FOR DEFENDANTS

DONALD J. TRUMP, President of the
United States; UNITED STATES OF
AMERICA; JOHN F. KELLY, Secretary of
Homeland Security; JEFFERSON B.
SESSIONS, III, Attorney General of the
United States in *City & County of San Francisco
v. Trump, et al*., No. 3:17-cv-00485-WHO

DONALD J. TRUMP, President of the
United States; JOHN F. KELLY, Secretary of
Homeland Security; JEFFERSON B.
SESSIONS, III, Attorney General of
the United States; MICK MULVANEY,
Director of the Office of Management and
Budget in *County of Santa Clara v. Trump,
et al*., No. 3:17-cv-00574-WHO

DONALD J. TRUMP, President of the
United States; JOHN F. KELLY, Secretary
of Homeland Security; JEFFERSON B.
SESSIONS, III, Attorney General of the
United States; and UNITED STATES
OF AMERICA in *City of Richmond v. Trump,
et al*., No. No. 3:17-cv-01535-WHO