UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| COUNTY OF SANTA CLARA,<br><br>    Plaintiff,<br><br>    v.<br><br>DONALD J. TRUMP, et al.,<br><br>    Defendants. | **ORDER DENYING THE GOVERNMENT'S MOTIONS FOR RECONSIDERATION AND TO DISMISS WITH REGARDS TO THE CITY AND COUNTY OF SAN FRANCISCO AND THE COUNTY OF SANTA CLARA**<br><br>Case No. 17-cv-00574-WHO<br><br>Dkt. Nos. 113, 115 |
| CITY AND COUNTY OF SAN FRANCISCO,<br><br>    Plaintiff,<br><br>    v.<br><br>DONALD J. TRUMP, et al.,<br><br>    Defendants. | Case No. 17-cv-00485-WHO<br><br>Dkt. Nos. 107, 111 |

**INTRODUCTION**

The government has moved for reconsideration of my April 25, 2017 order enjoining section 9(a) of Executive Order 13768 ("PI Order").[1] It has also moved to dismiss the City and County of San Francisco's and the County of Santa Clara's claims under Rule 12(b)(6) and Rule 12(b)(1). The government's motions rely heavily on Attorney General Sessions's two page

---

[1] In the alternative, the government seeks to clarify the scope of the PI Order. However, in its reply, the government states, "If the Court believes defendants correctly read the Order of April 25, 2017, as not enjoining them from exercising legal authority, independent of the Executive Order, to impose conditions on grant programming, then formal clarification may be unnecessary." Gov. Recon. Reply at 1 n.2 (SF Dkt. No. 113). The government correctly reads the PI Order as enjoining only section 9(a) of the Executive Order. The PI Order does not address or enjoin any other independent authority that may allow the government to impose grant conditions on funds, as no such issue was before the court.

memorandum (the "AG Memorandum") directed to the grant making components of the Department of Justice ("DOJ"), which the government argues outlines DOJ's definitive interpretation of the Executive Order. Because I conclude that the AG Memorandum does not change the analysis from the PI Order, the government's motions for reconsideration are DENIED.

Similarly, with regards to the motions to dismiss, the AG Memorandum does not impact my prior conclusions that the Counties have standing, that their claims against the Executive Order are ripe, and that they are likely to succeed on the merits of those claims. I have not previously addressed San Francisco's declaratory relief claim. I do so now and conclude that San Francisco has adequately stated a claim for declaratory relief. The government's motions to dismiss San Francisco's and Santa Clara's claims are DENIED.[2]

## BACKGROUND

On April 25, 2017, I granted San Francisco's and Santa Clara's motions for a preliminary injunction enjoining enforcement of Executive Order 13768 section 9(a). Preliminary Injunction Order ("PI Order") (SF Dkt. No. 82); (SC Dkt. No. 98). In granting the Counties' motions, I rejected the interpretation of the Executive Order that the government put forward at oral argument, that the Executive Order is a mere directive to the Department of Homeland Security ("DHS") and DOJ that does not seek to place any new conditions on federal funds. Even though government counsel convincingly assured me that this was the accepted interpretation of the Order throughout the ranks of DOJ, I concluded that the interpretation was not legally plausible in light of the Order's plain language and the government's many statements indicating the Order's expansive scope. PI Order at 14.

On May 22, 2017, Attorney General Sessions issued the AG Memorandum, putting forward DOJ's "conclusive" interpretation of the Executive Order; it essentially repeats the interpretation that the government proposed at oral argument. *See* Reconsideration Motion,

---

[2] The motions for leave to file amicus briefs at SF Dkt. Nos. 114, 119, 120, 121, 122, 123, 124, 125, 126, 127, 128, 129, 130, 131, 132; and SC Dkt. Nos. 118, 122, 123, 124, 125, 126, 127, 128, 129, 130, 131, 132, 133, 134, 135 are GRANTED. Santa Clara's motion to file a sur-reply at SC Dkt. No. 138 is GRANTED.

Attachment A ("AG Memorandum") (SF Dkt. No. 107). The AG Memorandum states that the Executive Order does not "purport to expand the existing statutory or constitutional authority of the Attorney General and the Secretary of Homeland Security in any respect" and instead instructs those officials to take action "to the extent consistent with the law." AG Memorandum at 2. It also states that the defunding provision in section 9(a) will be applied "solely to federal grants administered by [DOJ] or [DHS]" and to grants that require the applicant to "certify . . . compliance with federal law, including 8 U.S.C. section 1373, as a condition for receiving an award." AG Memorandum at 1-2. The AG Memorandum also states that DHS and DOJ may only impose these conditions pursuant to "existing statutory or constitutional authority," and only where "grantees will receive notice of their obligation to comply with section 1373." AG Memorandum at 2.

The same day that the AG Memorandum was released, the government moved for leave to file a motion for reconsideration of the PI Order on the grounds that the AG Memorandum contradicts conclusions central to my justiciability and merits determinations. Reconsideration Motion ("Recon. Mot.") at 4 (SF Dkt. No. 107); (SC Dkt. No. 113). The Counties opposed the motion for leave, arguing that the government had not been diligent in bringing the motion and had failed to demonstrate that the AG Memorandum was a material change of fact or law, as required by Civil Local Rule 7-9. *See* e.g. SF Opposition to Motion for Leave at 1-4 (SF Dkt. No. 103). I granted the government's motion for leave without addressing these arguments to avoid creating a procedural ambiguity regarding the government's time to appeal the PI Order, and the government promptly filed its motions for reconsideration. *See* Leave Order at 1-2 (SF Dkt. No. 106).[3]

While its reconsideration motions were pending, the government moved to dismiss all the

---

[3] In my Order granting leave, I stated that I would address Local Rule 7-9's requirements in ruling on the merits of the reconsideration motion. Leave Order at 1-2. Because I conclude that the government is not entitled to reconsideration on the merits, I do not address Local Rule 7-9's diligence requirement. Although I do not directly address Local Rule 7-9(b)'s requirement that the moving party show a material change in fact or law, or a manifest error by the court, I address substantially similar issues in analyzing the merits of the reconsideration motions under Ninth Circuit law.

3

claims brought by San Francisco and Santa Clara.[4]  In its motions to dismiss, the government asserts that the Counties lack standing to challenge the Executive Order, especially in light of the guidance issued in the AG Memorandum, because the Executive Order is an internal directive that does not purport to change the law.  It further asserts that the plaintiffs have failed to state any claim against the Executive Order.  The government also moves to dismiss San Francisco's claim for a declaration that it complies with section 1373 on the grounds that San Francisco has not identified an independent cause of action to seek declaratory relief and its claim is non-justiciable.

## LEGAL STANDARD

**RECONSIDERATION**

Under the Northern District's local rules, before filing a motion for reconsideration a party must obtain leave of court.  Civil L.R. 7-9(a).  To obtain leave, the party must "specifically show reasonable diligence in bringing the motion" and one of the following:

> (1) That at the time of the motion for leave, a material difference in fact or law exists from that which was presented to the Court before entry of the interlocutory order for which reconsideration is sought. The party also must show that in the exercise of reasonable diligence the party applying for reconsideration did not know such fact or law at the time of the interlocutory order; or
>
> (2) The emergence of new material facts or a change of law occurring after the time of such order; or
>
> (3) A manifest failure by the Court to consider material facts or dispositive legal arguments which were presented to the Court before such interlocutory order.

Civil L. R. 7-9(b)(1)-(3).

Once a reconsideration motion is filed, reconsideration is appropriate "if the district court (1) is presented with newly discovered evidence, (2) committed clear error or the initial decision was manifestly unjust, or (3) there is an intervening change in controlling law."  *Sch. Dist. No. 1J, Multnomah Cnty., Or. v. ACandS Inc.*, 5 F.3d 1255, 1263 (9th Cir. 1993).

---

[4] The government has also moved to dismiss the claims brought by the City of Richmond in the related action *City of Richmond v. Trump*, No. 17-cv-1535.  I will address that motion in a separate order.

4

**MOTION TO DISMISS**

Under Federal Rule of Civil Procedure 12(b)(6), a district court must dismiss a complaint if it fails to state a claim upon which relief can be granted. To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when the plaintiff pleads facts that "allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). There must be "more than a sheer possibility that a defendant has acted unlawfully." *Id*. While courts do not require "heightened fact pleading of specifics," a plaintiff must allege facts sufficient to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555, 570.

In deciding whether a plaintiff has stated a claim upon which relief can be granted, the court accepts plaintiff's allegations as true and draws all reasonable inferences in favor of the plaintiff. *Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987). However, the court is not required to accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig*., 536 F.3d 1049, 1055 (9th Cir. 2008).

A motion to dismiss filed pursuant to Rule 12(b)(1) is a challenge to the court's subject matter jurisdiction. *See* Fed. R. Civ. P. 12(b)(1). "Federal courts are courts of limited jurisdiction," and it is "presumed that a cause lies outside this limited jurisdiction." *Kokkonen v. Guardian Life Ins. of Am.*, 511 U.S. 375, 377 (1994). The party invoking the jurisdiction of the federal court bears the burden of establishing that the court has the requisite subject matter jurisdiction to grant the relief requested. *Id.*

A challenge pursuant to Rule 12(b)(1) may be facial or factual. *See White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000). In a facial attack, the jurisdictional challenge is confined to the allegations pled in the complaint. *See Wolfe v. Strankman*, 392 F.3d 358, 362 (9th Cir. 2004). The challenger asserts that the allegations in the complaint are insufficient "on their face" to invoke federal jurisdiction. *See Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). To resolve this challenge, the court assumes that the allegations in the complaint are true

5

and draws all reasonable inferences in favor of the party opposing dismissal. *See Wolfe*, 392 F.3d at 362.

"By contrast, in a factual attack, the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction." *Safe Air*, 373 F.3d at 1039. To resolve this challenge, the court "need not presume the truthfulness of the plaintiff's allegations." *Id.* (citation omitted). Instead, the court "may review evidence beyond the complaint without converting the motion to dismiss into a motion for summary judgment." *Id.* (citations omitted). Once the moving party has made a factual challenge by offering affidavits or other evidence to dispute the allegations in the complaint, the party opposing the motion must "present affidavits or any other evidence necessary to satisfy its burden of establishing that the court, in fact, possesses subject matter jurisdiction." *St. Clair v. City of Chico*, 880 F.2d 199, 201 (9th Cir. 1989); *see also Savage v. Glendale Union High Sch. Dist. No. 205*, 343 F.3d 1036, 1040 n.2 (9th Cir. 2003).

**DISCUSSION**

**I.    RECONSIDERATION**

The government has moved for reconsideration of my preliminary injunction order. Under Ninth Circuit precedent, reconsideration is only appropriate "if the district court (1) is presented with newly discovered evidence, (2) committed clear error or the initial decision was manifestly unjust, or (3) there is an intervening change in controlling law." *See Sch. Dist. No. 1J, Multnomah Cnty., Or.*, 5 F.3d at 1263. The government does not contend that I committed clear error in my initial decision or manifestly failed to consider material facts or dispositive legal arguments. Instead, it argues that the AG Memorandum represents a change in law and is a new material fact that justifies reconsideration.

**A.    Whether the AG Memorandum Reflects a Change in Controlling Law**

The government does not contend that the AG Memorandum is controlling authority that binds this court. *See* Gov. Recon. Reply at 5 n.6. It does suggest that the AG Memorandum undermines my prior conclusions regarding the meaning and scope of the Executive Order and should be credited because it is the "conclusive" interpretation of the Attorney General. *Id.* at 7-11.

This argument is not persuasive. If, as the government admits, the AG Memorandum is not new controlling authority, it is persuasive only to the extent that it is an accurate and credible reading of the Executive Order. *See Comite de Jornaleros de Redondo Beach v. City of Redondo Beach*, 657 F.3d 936, 946 (9th Cir. 2011)(while a court must "consider the City's authoritative constructions of the Ordinance, including its implementation and interpretation of it," it need not "adopt an interpretation precluded by the plain language of the ordinance."). It is unnecessary to address the merits of the interpretation outlined in the AG Memorandum because it is the same interpretation the government proposed at oral argument; I have already assessed and rejected it as not legally plausible. *See* SC Recon. Oppo. at 6-8.

A motion for reconsideration should not "be used to ask the Court to rethink what it has already thought," *Garcia v. City of Napa*, No. C-13-03886-EDL, 2014 WL 342085, at *1 (N.D. Cal. Jan. 28, 2014), and is not a "substitute for appeal or a means of attacking some perceived error of the court." *Washington v. Sandoval*, C-10-0250-LHK, 2011 WL 2039687, at *1 (N.D. Cal. May 24, 2011). Because the AG Memorandum is not new controlling authority and only repeats an interpretation of the Executive Order that I have already rejected, it does not justify reconsideration as a "change in controlling authority."

### B. Whether the AG Memorandum Reflects a Material Change in Fact or Evidence

The government submits that the AG Memorandum reflects a material change in fact or evidence because it is formal guidance from the Attorney General regarding the scope and meaning of the Executive Order that binds DOJ and other federal agencies. *Id.* It argues that "the significance of the AG Memorandum lies not only in what it says, but also in the fact that the Attorney General himself has now provided guidance, and in a formal way that is binding on those who will implement the grant eligibility provision – thus directly affecting the likelihood that the Order could be implemented in any way that violates the Constitution or injures the plaintiffs." Gov. Recon. Reply at 3.

#### 1. Illusory Promises to Enforce a Law Narrowly Do Not Resolve Challenges to the Law Itself

In opposition, the Counties contend that the AG Memorandum is nothing new and merely

states the same reading of the Executive Order that the government presented at the hearing and which I have already rejected. They assert that to the extent the AG Memorandum reflects a commitment to implement the Executive Order more narrowly than it is written, similar promises are routinely rejected by courts as illusory and should not impact the analysis here. *See e.g.*, *City of Lakewood v. Plain Dealer Publ'g Co.*, 486 U.S. 750, 770 (1988).

For example, in *City of Lakewood*, the Supreme Court considered whether a local ordinance that gave the mayor near unbridled discretion to reject permits was constitutional. *Id.* The City had urged the Court to presume that "the mayor will act in good faith and adhere to standards absent from the ordinance's face." *Id.* The Court declined to do so, holding that limitations on the discretion of a government actor must be "made explicit by textual incorporation, binding judicial or administrative construction, or well-established practice." *Id.*

Similarly in *Doe v. Harris*, the Ninth Circuit upheld a preliminary injunction order enjoining enforcement of a California statute that required sex offenders to disclose their online usernames and passwords to the state and which the state could then disclose to the public "when necessary to ensure the public safety." *Doe v. Harris*, 772 F.3d 563, 579-80 (9th Cir. 2014). The Ninth Circuit rejected the state's argument that "existing constraints on law enforcement activities" would prevent the statute from being implemented in an unconstitutional way, holding that a "promise from the State that it will use the power appropriately is not sufficient." *Id.* at 580-581; *see also United States v. Stevens*, 559 U.S. 460, 480 (2010) (the Executive Branch's reassurance that it construed a statute as applying only to "extreme" animal cruelty and that it "neither has brought nor will bring a prosecution for anything less" did not resolve a constitutional challenge based on the text of the statute); *United States v. Nosal*, 676 F.3d 854, 862 (9th Cir. 2012) ("The government assures us that, whatever the scope of the CFAA, it won't prosecute minor violations. But we shouldn't have to live at the mercy of our local prosecutor.").

Even a formalized promise from those charged with enforcing an offending statute may be insufficient. *See City of Redondo Beach*, 657 F.3d at 946. In *City of Redondo Beach*, the City had submitted an affidavit from its City Attorney, attesting that a local Ordinance had only been enforced narrowly "and that [the City Attorney] ha[d] no intention of altering this practice." *Id.*

8

But this affidavit did not resolve the Ninth Circuit's concern that the ordinance's plain language raised constitutional issues. *Id.* Although the court acknowledged that it must "consider the City's authoritative constructions of the Ordinance, including its implementation and interpretation of it," it held that it need not "adopt an interpretation precluded by the plain language of the ordinance." *Id.*

The government argues that the AG Memorandum is different than the illusory promises in the cases listed above. Gov. Recon. Reply at 4 n.4. It specifically distinguishes *Doe v. Harris*, noting that while in that case the state relied on "general principles of good police practices," in this case "the very official charged with implementing the grant eligibility provision – and with providing legal advice to other agencies – has stated how the provision will be implemented." *Id.* The AG Memorandum is certainly more forceful than the representations of counsel in many of the cases above, but is it the kind of binding authority that would genuinely dispel the Counties' fear of unlawful enforcement?

### C. Is the AG Memorandum an Illusory Promise? Or is it Truly Binding?

The government asserts that the AG Memorandum is not illusory because, by longstanding tradition and practice, the Attorney General's legal opinions are treated as authoritative by the heads of executive agencies. The Counties raise two initial responses to this argument: the AG Memorandum is not a legal opinion; and even if it is, it is not clear that the Attorney General's legal opinions do in fact bind other agencies. In addition, they argue that this Memorandum does not bind DHS, cannot bind the Attorney General, and is therefore nothing more than an illusory promise to enforce the Executive Order narrowly.

#### 1. Is the AG Memorandum a binding legal opinion?

##### a. The AG Memorandum is not a legal opinion

The Counties first assert that the AG Memorandum is not a legal opinion. In support of this argument they point out that the Memorandum's title is "Implementation of Executive Order 13768." SF Recon. Oppo. at 10. The Counties assert that this title indicates that the Memorandum is an "implementation" document regarding how the Executive Order will be enforced, not a legal opinion regarding its meaning and scope. They note that the Memorandum is

9

directed only to "All Department Grant-Making Components" within DOJ, and not to any other executive agency. *Id.* at 11. They contend that this also indicates that the AG Memorandum is only meant to lay out a plan to enforce the Executive Order within DOJ, and is not intended to offer legal guidance to other executive agencies.

With regards to the substance of the AG Memorandum, the Counties point out that the document is only two pages long and "does nothing more than summarize the relevant terms of the Executive Order and set forth the Attorney General's determination of how he intends to carry out the responsibilities it assigns to him. It offers no legal analysis or opinion regarding, for example, the constitutional limits of the Executive Order's broad language or the legal reasons requiring or dictating his espoused narrowed interpretation." *Id.*

The government dismisses these critiques. It asserts that the AG Memorandum is a legal opinion because it "obviously deals with underlying 'questions of law,' such as the application of 8 U.S.C. 1373." Gov. Recon. Reply at 5. That the AG Memorandum "deals with underlying questions of law" is not persuasive evidence that it is in fact a legal opinion; any memorandum discussing the implementation of a particular law is likely to touch on some underlying questions of the law. While parts of the AG Memorandum seem to reach legal determinations,[5] many indicate only a plan of enforcement. For example, with regard to the funds at issue under the Executive Order, the AG Memorandum states: "I have determined that section 9(a) of the Executive Order, which is directed to the Attorney General and the Secretary of Homeland Security, *will be applied* solely to federal grants administered by the Department of Justice or the Department of Homeland Security, and not to other sources of federal funding." AG Memorandum at 1 (emphasis added). This statement indicates a plan to apply section 9(a) only to DOJ and DHS grants, not a legal determination that the Order is actually limited solely to those grants as a matter of law. Similarly, the AG Memorandum states that "I have determined that, *for purposes of enforcing the Executive Order*, the term 'sanctuary jurisdiction' will refer only to

---

[5] *See e.g.*, AG Memorandum at 1 ("Section 9(a) expressly requires enforcement 'to the extent consistent with law,' and therefore does not call for the imposition of grant conditions that would violate any applicable constitutional or statutory limitation.").

jurisdictions that 'willfully refuse to comply with 8 U.S.C. 1373." AG Memorandum at 2 (emphasis added). This statement reflects a plan of enforcement, not a legal determination that the Order could not bear a broader reading of "sanctuary jurisdictions" if desired.

The AG Memorandum is directed only to grant-making components within DOJ, is labeled as an "implementation" memorandum, is only two pages long, does not engage in substantive legal analysis, and primarily outlines plans to enforce the order, rather than an opinion on its meaning or scope. It does not appear to be a legal opinion that might be binding authority on other federal agencies or DHS.

### 2. Even if it is a legal opinion, the AG Memorandum does not clearly bind other executive agencies

The government asserts that Attorney General legal opinions are binding on executive agencies both by tradition and as a result of the Attorney General's statutory duties. Case law does not conclusively support the government's position that all Attorney General Memoranda are binding on the executive branches.

In support of its argument, the government cites *Tenaska Washington Partners II, L.P. v. United States*, 34 Fed. Cl. 434, 439 (1995) in which the Court of Federal Claims stated that "Memoranda issued by the [Office of Legal Counsel], including this one, are binding on the Department of Justice and other Executive Branch agencies and represent the official position of those arms of government." It also cites *ACLU v. Dep't of Def.*, 396 F. Supp. 2d 459, 462 (S.D.N.Y. 2005) in which the Southern District of New York stated that "The Office of the Attorney General of the DOJ is empowered to furnish advice and opinions on legal matters to government agencies, 28 C.F.R. § 0.5 (2005), and has issued public memoranda interpreting the Convention Against Torture."

While these cases offer some support for the government's position, they are also clearly distinguishable from the facts here. Both dealt with formal and reasoned legal opinions prepared by the Office of Legal Counsel. In addition, while *ACLU* acknowledges that the Attorney General may furnish advice and opinions to government agencies, it does not address the primary issue here, whether those opinions are then binding on the agencies. *See ACLU*, 396 F. Supp. 2d 462.

11

The government's reliance on *Tenaska* and *ACLU*, two non-binding lower court cases, one of which does not address the issue at hand, demonstrates that whether an Attorney General memorandum is binding is not a settled issue of law. This conclusion is further supported by one of the secondary sources the government cites, which itself notes that "the question of whether (and in what sense) the opinions of the Attorney General, and, more recently, the Office of Legal Counsel, are legally binding within the executive branch remains somewhat unsettled." *See* Randolph Moss, *Executive Branch Legal Interpretation: A Perspective from the Office of Legal Counsel*, 52 Admin. L. Rev. 1303, 1318 (2000).

Nor do the statutes the government cites offer persuasive support for its position. It asserts that the Attorney General's memoranda are binding on other agencies because the Attorney General has a statutory duty to advise executive department heads on "questions of law," 28 U.S.C. § 512, and to furnish formal legal opinions to executive agencies, 28 C.F.R. § 0.5(c). While section 512 allows a department head to request and receive an Attorney General opinion on "questions of law arising in the administration of his department," 28 U.S.C. § 512, it does not address whether such an opinion would bind the relevant department; moreover, it is inapplicable to the facts here since there has been no such request. And while section 0.5(c) requires the Attorney General to provide "formal and informal" advice and opinions "on legal matters," 28 C.F.R. § 0.5(c), it is silent on whether any such advice would bind other agencies.

The AG Memorandum does not appear to be a legal opinion, and the law is unsettled on whether such opinions are binding on other agencies. The government has not persuasively demonstrated that the AG Memorandum is "binding" on other agencies as a legal opinion.

### 3. Does the AG Memorandum Bind DHS as an Opinion re Immigration Enforcement?

The government asserts that the AG Memorandum binds DHS because, although the Secretary of the Department of Homeland Security administers the immigration laws, the Immigration and Nationality Act states that a "determination and ruling by the Attorney General with respect to all questions of law shall be controlling." 8 U.S.C. § 1103(c)(1). But the AG Memorandum is not clearly a determination or ruling on a question of immigration law. The AG

12

Memorandum is an internal DOJ implementation order, is not directed to DHS, and does not appear to be a legal opinion. This two-page order outlining how the Executive Order will be implemented within DOJ is not fairly read as a determination and ruling of law that might be controlling on the Secretary of the Department of Homeland Security.

### 4. Does the AG Memorandum Bind DOJ and the Attorney General?

The final and most glaring problem with the AG Memorandum is that it is not binding on the Attorney General. As the Counties point out, the Attorney General could, at any time, revoke the AG Memorandum and issue new guidance. Or the President could replace the Attorney General to revoke it.

The government does not dispute that the AG Memorandum is revocable, but notes that "that is true of any authoritative guidance issued by a federal official." Gov. Recon. Reply at 6. That the AG Memorandum shares this trait with other federal guidance does nothing to resolve the issue here. The problem with the AG Memorandum, like the promises from *Harris*, *Stevens*, and *City of Redondo Beach*, is that it is a self-imposed restriction. Where the problem with a law is that it grants excessive discretion or power to a particular official, the problem cannot be resolved by having that same official impose a revocable limitation on himself. Such a restriction does not have the type of exterior oversight that the Supreme Court has held is necessary to cabin unbridled discretion. *See City of Lakewood*, 486 U.S. at 770 (limitations on the discretion of a government actor must be "made explicit by textual incorporation, binding judicial or administrative construction, or well-established practice."). Although more formal than a bare promise, because the AG Memorandum will remain in effect only so long as the Attorney General or the President see fit, it is still effectively a "promise from the State that it will use the power appropriately" and "is not sufficient" to cabin the Executive Order. *Harris*, 772 F.3d at 579-80.

I conclude that the AG Memorandum is functionally an "illusory promise" to enforce the Executive Order narrowly and, as such, does not resolve the constitutional claims that the

13

Counties have brought based on the Order's language.[6] As the AG Memorandum reflects the same interpretation of the Executive Order that government counsel proposed at the preliminary injunction hearing, and which I considered and rejected in the PI Order, it is not a material change in fact or evidence that would impact my prior analysis.

Because the AG Memorandum reflects neither a change in controlling authority nor a material change in fact or evidence, it does not support reconsideration of the PI Order. The government's motions for reconsideration are DENIED.

## II.     MOTIONS TO DISMISS

The government moves to dismiss the Counties' claims. It leans heavily on the AG Memorandum, which it asserts demonstrates that the Counties lack standing, that their claims are not ripe, and that their claims challenging the Executive Order are meritless. SF MTD (SF Dkt. No. 111); SC MTD (SC Dkt. No. 115). As discussed with regard to the motions for reconsideration, the AG Memorandum does not resolve the Executive Order's constitutional issues or alter the analysis from the PI Order. Accordingly, I do not credit the AG Memorandum's findings in assessing the government's motions to dismiss. This substantially simplifies resolution of the government's motions as I addressed most of the arguments it raises now, in detail, in the PI Order. Instead of repeating my prior analysis here, I will simply refer to the relevant portions of my prior order where appropriate. I have not previously discussed San Francisco's declaratory relief claim and so address the government's motion to dismiss that claim below.

### A.     Plaintiffs Have Standing and Their Claims are Ripe

The government argues that the plaintiffs lack standing and that their claims are unripe. In the PI Order I dedicated twenty-five pages to these issues with regards to San Francisco and Santa Clara and concluded that the Counties have standing to challenge the Executive Order. *See* PI Order at 11-35. I also concluded that the Counties' claims were ripe. San Francisco and Santa Clara have established standing and ripeness.

---

[6] For the same reasons, the AG Memorandum does not meaningfully dispel the Counties' fear of irreparable harm resulting from budget uncertainty. With nothing preventing the AG Memorandum from being revoked or overwritten, absent the preliminary injunction, the Counties would still face a genuine threat that the Executive Order could be enforced broadly.

14

### B. The Executive Order is not an Internal Directive

The government contends that the plaintiffs' claims must be dismissed because the Executive Order is an internal directive and does not change the law. In the PI Order, I concluded that the Executive Order is not an internal directive and does change the law. *See* PI Order at 12-16.

### C. The Plaintiffs Have Stated Valid Claims Challenging Section 9(a) of the Executive Order

The government asserts that Santa Clara and San Francisco have failed to state any claim challenging section 9(a) of the Executive Order. In the PI Order, I found that the Counties were likely to succeed on all of their claims against the Executive Order. *See* PI Order at 35-44. In concluding that the Counties were likely to succeed on these claims, I necessarily concluded that the Counties had adequately stated these claims, a considerably lower burden. Accordingly, as specified below, I conclude that the Counties have adequately stated all their claims challenging section 9(a) of the Executive Order.

#### 1. The Counties' Separation of Powers Claims

The government asserts that Santa Clara and San Francisco have failed to state a separation of powers claim. As detailed in the PI Order, the Counties have adequately stated a separation of powers claim. *See* PI Order at 35-37.

#### 2. The Counties Spending Clause Claims

The government asserts that Santa Clara and San Francisco have failed to state a spending clause violation claim. As detailed in the PI Order, the Counties have adequately stated a spending clause violation claim. *See* PI Order at 37-41.

#### 3. San Francisco's Tenth Amendment Claim

The government asserts that San Francisco has failed to state a Tenth Amendment violation. As detailed in the PI Order, San Francisco has adequately stated a Tenth Amendment violation. *See* PI Order at 39-41.

#### 4. Santa Clara's Fifth Amendment Vagueness Claim

The government asserts that Santa Clara has failed to state a Fifth Amendment vagueness claim. As detailed in the PI Order, Santa Clara has adequately stated a Fifth Amendment

vagueness claim. *See* PI Order at 41-43.

### 5. Santa Clara's Fifth Amendment Procedural Due Process Claim

The government asserts that Santa Clara has failed to state a Fifth Amendment procedural due process claim. As detailed in the PI Order, Santa Clara has adequately stated a Fifth Amendment procedural due process claim. *See* PI Order at 43-44.

### D. San Francisco's Declaratory Relief Claim

San Francisco has brought a claim for declaratory relief seeking a declaration that its laws comply with section 1373. The government moves to dismiss this claim. It asserts that San Francisco has failed to identify a right of action in section 1373 or elsewhere that would allow it to pursue declaratory relief and that "the declaration that plaintiff seeks would constitute a prohibited advisory opinion." SF MTD at 11.

#### 1. San Francisco Must Demonstrate an "Actual Controversy" to Seek Declaratory Relief Under the Declaratory Judgment Act

Despite the government's assertions, San Francisco does not need to demonstrate an independent cause of action to seek a declaration that it complies with section 1373. Instead, it must demonstrate that there is an actual legal controversy regarding its compliance with section 1373 in order to pursue declaratory relief under the Declaratory Judgment Act.

The government correctly notes that the Declaratory Judgment Act creates a remedy for litigants but is not an independent cause of action. *See, e.g.*, *Muhammad v. Berreth*, No. C 12-02407 CRB, 2012 WL 4838427, at *5 (N.D. Cal. Oct. 10, 2012) ("Declaratory relief is not an independent cause of action or theory of recovery, only a remedy. The [Declaratory Judgment Act] does not itself confer federal subject-matter jurisdiction.") (citation and internal quotation marks omitted). However, it draws the wrong conclusion from this well-established holding, asserting that a plaintiff must have some other independent statutory right to bring a plausible claim for declaratory relief. SF MTD at 11. If that were the case, the Declaratory Judgment Act would be meaningless; any plaintiff able to seek declaratory relief would already have an independent right to do so. What this rule clarifies is that the Declaratory Judgment Act "does not itself confer federal subject-matter jurisdiction" and that a plaintiff seeking declaratory relief must

16

independently establish that it has standing to seek relief. *Fid. & Cas. Co. v. Reserve Ins. Co.*, 596 F.2d 914, 916 (9th Cir. 1979).

To establish Article III standing and seek relief under the Declaratory Judgment Act, a plaintiff must demonstrate that its claim involves an "actual controversy." *See Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 240 (1937); 28 U.S.C. § 2201(a) ("In a case of actual controversy within its jurisdiction . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."). This means that the dispute must be "definite and concrete, touching the legal relations of parties having adverse legal interests" and be "real and substantial." *Aetna*, at 240-241. "Basically, the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Maryland Casualty Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 273 (1941).

### 2. San Francisco Has Demonstrated an "Actual Controversy" regarding its Compliance with Section 1373

There is a real and immediate controversy between San Francisco and the federal government regarding whether San Francisco complies with section 1373. Although the government has not sued San Francisco for failing to comply with section 1373 and has not declared San Francisco a "sanctuary jurisdiction" under section 9(a) of the Executive Order, in many statements, official writings, and opinion pieces, key government officials have repeatedly indicated that, in the eyes of the federal government, San Francisco's policies do not comply with federal law.

For example, in a March 27, 2017 statement on sanctuary cities, Attorney General Sessions criticized San Francisco for its "sanctuary policies," noted that this type of "disregard for the law must end" and indicated that DOJ would be taking steps to ensure compliance with section 1373. *See* SF. RJN Ex. D. (SF Dkt. No. 116-4).[7] In a statement to law enforcement representatives in

---

[7] I take judicial notice of RJN Ex. D; a press release dated March 27, 2017 and titled "Attorney General Jeff Sessions Delivers Remarks on Sanctuary Jurisdictions." Attorney General Sessions's statements in this document are judicially noticeable at the statements "can be accurately and

17

Las Vegas on the day of the hearing on these motions, the Attorney General noted that "[s]ome 300 jurisdictions in this country refuse to cooperate with federal immigration authorities," and, that "politicians have forbidden [local law enforcement] to help." SF. 2nd Supp. RJN Ex. A at 2 (SF Dkt. No. 139).[8] He specifically called out San Francisco as one of the cities that "have these policies." *Id.* Representative John Culberson, who chairs the House of Representatives subcommittee that controls DOJ spending, and who has helped condition certain DOJ grants on compliance with section 1373, has stated that a sanctuary city is any city that "[v]iolates 8 U.S.C. Code 1373," SF RJN Ex. U at 2 (SF Dkt. No. 116-21),[9] and that section 1373 "bars state and local officials from interfering 'in any way' with requests for personal immigration information by federal authorities." SF RJN Ex. E at 3-4 (SF Dkt. No. 116-5).[10] Culberson has indicated his clear belief that San Francisco is in violation of section 1373, noting that it was San Francisco's sanctuary policies and the murder of Kate Steinle that galvanized him to ensure that DOJ grants would be conditioned on compliance with section 1373 in the first place. SF RJN Ex. U at 6. When questioned regarding San Francisco's lawsuit challenging the Executive Order, Culberson confidently asserted that San Francisco would ultimately lose and would not receive any federal money because it doesn't "follow federal law." SF RJN Ex. E at 11. Finally, in a formal

---

readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. § 201(b)(2). They are also judicially noticeable because they were posted on an official government website. *See Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998-99 (9th Cir. 2010).

[8] I take judicial notice of 2nd Supp. RJN Ex. A; a press release dated July 12, 2017 and titled "Attorney General Jeff Sessions Delivers Remarks in Las Vegas to Federal, State and Local Law Enforcement About Sanctuary Cities and Efforts to Combat Violent Crime." Attorney General Sessions's statements in this document are judicially noticeable at the statements "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. § 201(b)(2). They are also judicially noticeable because they were posted on an official government website. *See Daniels-Hall*, 629 F.3d at 998-99.

[9] I take judicial notice of RJN Ex. U, a copy of Jeff Sessions, John Culberson, Dennis Herrera, Jose Antonio Vargas, Op-Ed, 4 Voices: Are Sanctuary Cities Good for the Community, S.F. Chron., Apr.7, 2017, as it contains the statements of government officials which "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. § 201(b)(2).

[10] I take judicial notice of RJN Ex. E, a copy of the article "Did Culberson Misfire when he took a shot a 'sanctuary city' funds?", Houstonchronicle.com, updated March 19, 2017, as it contains the statements of government officials which "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. § 201(b)(2).

1   Memorandum assessing potential violations of section 1373, Inspector General Michael Horowitz
2   indicated that San Francisco's policies appear to be "inconsistent" with section 1373's
3   requirements. SF. RJN Ex. F at 6 n.7 (SF Dkt. No. 116-6).[11]

4   Given that key government actors charged with enforcing compliance with section 1373
5   have repeatedly called out San Francisco for its sanctuary policies and non-compliance with
6   federal immigration law, it appears there is a "real and substantial" dispute regarding whether San
7   Francisco complies with section 1373. The government could resolve this dispute by bringing a
8   federal preemption suit and challenging the legality of San Francisco's sanctuary policies (or by
9   disavowing that it has any intent to do so), but it has not done so. Meanwhile, it indicates that it
10  intends to expand the number of federal grants conditioned on compliance with section 1373 and
11  to enforce any conditions already in place.

12  "The Declaratory Judgment Act was designed to relieve potential defendants from the
13  Damoclean threat of impending litigation which a harassing adversary might brandish, while
14  initiating suit at his leisure or never. The Act permits parties so situated to forestall the accrual of
15  potential damages by suing for a declaratory judgment, once the adverse positions have
16  crystallized and the conflict of interests is real and immediate." *Societe de Conditionnement en*
17  *Aluminium v. Hunter Engineering Co.*, 655 F.2d 938, 943 (9th Cir. 1981). Because San Francisco
18  has demonstrated an "actual controversy" regarding its compliance with section 1373, it need not
19  sit back and wait, as the potential liability for its potential noncompliance with section 1373
20  increases. The Declaratory Judgment Act permits it to seek declaratory relief to resolve this "real
21  and substantial" legal dispute.

22  San Francisco has stated a justiciable claim for declaratory relief.

---

[11] I take judicial notice of RJN Ex. F, a copy of a Memorandum prepared by Michael E. Horowitz, Inspector General, U.S. Department of Justice, to Karol V. Mason, Assistant Attorney General for the Office of Justice Programs, U.S. Department of Justice, entitled "Department of Justice Referral of Allegations of Potential Violations of U.S.C. § 1373 by Grant Recipients," dated May 31, 2016, because government memoranda, bulletins, reports, letters, and statements of public record are appropriate for judicial notice. *See Brown v. Valoff*, 422 F.3d 926, 933 n.9 (9th Cir. 2005).

**CONCLUSION**

As outlined above, the government's motions for reconsideration and to dismiss San Francisco's and Santa Clara's claims are DENIED. It shall answer the complaints within twenty days.

**IT IS SO ORDERED.**

Dated: July 20, 2017

William H. Orrick
United States District Judge